Argued September 12, affirmed December 5, 1950

# GREENHAW *v.* PACIFIC-ATLANTIC STEAMSHIP CO., A CORPORATION

224 P. (2d) 918

*Erskine Wood,* of Portland, argued the cause for appellant. On the brief were Wood, Matthiessen & Wood, of Portland.

*K. C. Tanner,* of Portland, argued the cause for respondent. On the brief were Tanner, Clark & Carney, of Portland.

Before BRAND, Acting Chief Justice, and BAILEY*, HAY, LATOURETTE and WARNER, Justices.

## BRAND, A. C. J.

The plaintiff brought this action under the Merchant Marine Act of 1920, 46 U. S. C. A., Section 688, commonly called the "Jones Act". He sought damages for injuries sustained by him while in the course of his employment as bos'n on the defendant's steamship, St. Johns Victory. Plaintiff alleges that while on an outward voyage to Japan he was working in the vicinity of No. 4 hatch, cutting lashings from the preventer guy lines and that on top of the hatch covering a number of empty acetylene gas tanks had been negligently placed by the engine room department of the vessel in an insecure position and that by reason of the movement of the vessel one of the tanks rolled onto and against the plaintiff, striking his arm and body and thrusting the knife with which he was working, into his leg. It is alleged that the defendant was negligent in placing the gas tanks on the hatch without lashing them securely and in failing to warn the plaintiff of the condition. The answer is substantially a general denial. There was a verdict and judgment for the plaintiff. The defendant appeals from the judgment and also from an order of the trial court denying defendant's motion for judgment notwithstanding the verdict and in the alternative for a new trial. By its first assignment the defendant asserts that the trial court erred in refusing to direct a verdict in its favor. In passing upon this assignment we will consider the evidence in the light most favorable to the plaintiff.

---

\* Bailey, J., retired November 15, 1950.

Plaintiff was an experienced seaman and was serving as bos'n under the direction of the mate. Plaintiff's duties were supervisory in the deck department and he was foreman of the sailors working in that department. Under orders of the mate, and shortly before the ship reached Japan, the plaintiff was required to stretch the guys and preventers which are auxiliary guys, and to make ready for raising the booms, preparatory to discharge of cargo. The guys were coiled on the hatch and lashed with rope yarn to the storm battens. The plaintiff was the only witness to the accident. He testified as follows:

"A. Well, some of the boys were taking down the guys and stretching them to the bulwarks, which is that part of the ship that looks like a bulkhead that comes up, and others were doing various things, and in order to help out a little bit I jumped up on No. 4 hatch, and the preventer was coiled on the after end, more or less, the port side, and, of course, the preventer has to be stretched along with the guys, and I reached down to cut the lashing with my knife, and the ship give a roll, and a tank hit my foot and run the knife into my leg.

"Q. The tank came against you, did it? A. Yes.

"Q. Do you know what part of your body the tank hit? A. Well, somewhere along the calf of my leg; caused me to bend and lose my balance, and when I did that the knife went into my leg.

"Q. As you fell, the knife went into your leg? A. Yes, sir.

"*  *  *

"Q. I know, but you have said the knife went into your leg and you lost your balance. I want to ask you whether or not you fell as a result of being struck by that tank. A. Yes, sir.

"Q. Yes, what? A. Did I fall, did you say?

"Q. Yes. Did you fall? A. Yes, sir; I fell. I couldn't stand up. The knife was in my leg that deep (indicating)."

The foregoing testimony was given upon direct examination. Concerning it the defendant in its brief makes the following concession: "If the case stopped there it would appear that a tank rolled and hit him, caused him to lose his balance or fall and stick a knife into himself. * * *" But the defendant contends that the foregoing testimony was overcome on cross-examination. We disagree. We quote from the cross-examination of the plaintiff:

"Q. But you didn't see it there, did you? A. No, sir, I didn't notice it.

"Q. Well, then, how do you know it was there? A. Sir?

"Q. How do you know where it was? A. Well, I know that something knocked my feet out, and knocked me off my balance, and, of course, where the knife went into my leg I don't feel that I was responsible to know anything."

Concerning an adverse party deposition the plaintiff was asked:

"Q. Don't you remember testifying like this: 'How many tanks were there?' 'Well, I don't know that, either.' 'Question: How do you know it was a tank that hit you?' 'Answer: Well, I know because I seen it after I had got up that it was a tank.' And I call that to your attention in view of what you just said, that you couldn't rise. Didn't you testify like that? A. Why, if I told you that I probably did, but I don't see how you could expect me to give word verbatim of just what I said. I know that it was a tank. I know that.

"* * *

"A. And I know if it wasn't a tank, something knocked my foot out. I wouldn't just deliberately

fall down and stick a knife in my leg for the fun of it.

"* * *

"Q. Well, then, if the tank came from that forward starboard corner of the hatch, you couldn't see it at all, could you? A. No, sir.

"Q. You never saw it hit you, did you? A. No, sir.

"Q. You were knocked over by it, were you? A. Well, I lost—I was knocked and my balance went -out, and the knife went into my leg.

"Q. And where was the tank? A. Sir?

"Q. Where was the tank then? A. Why, I judge it was up there on the side of the hatch.

"Q. Well, now, the fact is, Mr. Greenhaw, being in this position and cutting up like that, the tank, as you say, off there, and your back to it, did you ever see the tank at all? A. Yes, I saw the tank.

"Q. When? A. I saw something that looked like a tank.

"Q. When? A. I guess whenever they helped me up or I got up and started for the hospital.

"Q. That is the first time you saw it? A. Yes, sir.

"Q. Where was it? Do you remember? A. Why, it was over there close to the hatch.

"Q. That is the only reason you think it was the tank that hit you, is it? A. Well, I judge, yes, sir, that was it."

The hatch cover upon which plaintiff was working is 30 x 20 feet in dimension. It is approximately level. Immediately before the accident one or more acetylene tanks were lying on the hatch. The tanks weigh 150 to 160 pounds each and are about 4 feet long and round. The tanks were used for welding by the engine department, with which department plaintiff had nothing to do. Plaintiff had nothing to do with the placing of

the tanks on the hatch. The ordinary practice is to stand the tanks upright and lash them securely in place. On the occasion in question the tanks were not lashed. Plaintiff testified that he had no notice or warning of the presence of the tanks or of their condition. The tanks had been placed upon the starboard side and at the forward end of the hatch. At the moment of the alleged injury the plaintiff was stooping over, facing toward the stern of the ship, and standing about a foot from the edge of the hatch on the port side, a distance from the location of the tanks of about 20 feet. He testified:

"Q. Well, if you were a bosun on a ship—not particularly this ship—any ship—and you observed something on the deck—on the deck, now, your department—and it looked to you unsafe, wouldn't you do anything about it? A. Well, if I observed it, yes, sir, I would.

"Q. That is part of your duty to do that, is it not? A. Well, it is and it is not, depending upon what department that is in. If it is in my department, yes, it is my duty.

"Q. The deck is your department, you said, though? A. Sir?

"Q. Didn't you say the deck was your department? A. Yes, sir. If it was in my department, something that belonged to my department, and it was loose, it would be my duty.

"Q. Well, do you mean to imply, now, that because this tank, you say, was left there by the engine room department that you couldn't touch it? Is that what you mean? A. Well, I could have touched it, but ordinarily it is the engine department's duty to lash up their own equipment, and to have done so would have involved overtime for my department to do it, and the mate strenuously objected to very much overtime."

The testimony of the plaintiff is confusing as to whether he saw the tanks at all prior to the accident. He testified that if he had seen the tanks and had seen that they were not lashed, he would have secured the authority of the mate and would then have lashed them. The reason plaintiff did not lash the tanks is because he had not noticed them. On cross-examination he testified positively that he had not seen them. At the time of the accident there was a quartering sea and the ship was rolling. The roll of the ship, said the plaintiff, set the tanks to rolling, but he added that there were several sailors on top of the hatch and that there could have been other factors. "* * * somebody over there that I wasn't noticing could have kicked it or walked against it. * * *"

Witness Mansfield, called by the plaintiff, testified that with respect to gear such as acetylene tanks, used by another department, there is a custom and practice concerning their care. The engine department takes care of them and secures whatever is left on deck. But, he added that the bos'n would take some action if he noticed a dangerous condition. There is no evidence in the record as to the length of time which had elapsed after the engine department had placed the tanks on the hatch cover.

While it must be said that this is a weak case, we think there was substantial evidence of negligence on the part of persons other than the plaintiff, and for whom the defendant was responsible. If it be said that the plaintiff was also negligent in failing to observe the unlashed tanks on the hatch and to cause them to be made secure, the answer is that contributory negligence is not a defense in this type of case and that the court submitted to the jury the issue of contributory

negligence as a matter to be considered in mitigation of damages.

Our conclusion that there was evidence of negligence on the part of the defendant is not based on the doctrine of res ipsa loquitur although the plaintiff relies in part upon that doctrine. We find it unnecessary to consider that question. There was direct evidence that the tanks were placed on the hatch by the engine department; that they should have been lashed, but were not. The plaintiff was unaware of their presence, or at least unaware that they were loose, and one of them, by reason of the roll of the ship, or because of the action of some sailor, rolled against the plaintiff, causing his injury.

Decisions under the Federal Employers' Liability Act are applicable under the Jones Act. See cases cited: U. S. C. A., Title 46, Section 688, Note 7. Furthermore the rights and obligations of injured seamen suing under federal statutes "depend upon the principles of law as interpreted and applied in the federal courts". *Wychgel v. States Steamship Co. et al.*, 135 Or. 475, 296 P. 863, 284 U. S. 625, 76 L. Ed. 533.

In *Lavender v. Kurn,* 327 U. S. 645, 90 L. Ed. 916, it was contended that a switchman standing adjacent to the railroad track was struck in the head by the end of a mail hook projecting from the side of a moving train. The evidence was weak and was only circumstantial. To the contrary, there was persuasive evidence that the workman had been murdered by a third party unknown. The Missouri Supreme Court held that there was no substantial evidence of negligence. The United States Supreme Court held that there was such evidence, and said:

"It is true that there is evidence tending to show that it was physically and mathematically impos-

sible for the hook to strike Haney. And there are facts from which it might reasonably be inferred that Haney was murdered. But such evidence has become irrelevant upon appeal, there being a reasonable basis in the record for inferring that the hook struck Haney. The jury having made that inference, the respondents were not free to relitigate the factual dispute in a reviewing court. Under these circumstances it would be an undue invasion of the jury's historic function for an appellate court to weigh the conflicting evidence, judge the credibility of witnesses and arrive at a conclusion opposite from the one reached by the jury."

The evidence in the case at bar is much more substantial than that which was introduced in the Lavender case, and we do not feel free to relitigate the factual dispute in this case. No error was committed by the trial court in denying the motion for a directed verdict.

The second assignment of error complains of the giving of a strongly worded instruction to the effect that the duties imposed by the Federal Employers' Liability Act, as extended to seamen by the Jones Act, are absolutely nondelegable. Exception was taken because "there is no issue in the case about the delegation of duty." In defendant's brief it is contended that the instruction was abstract and prejudicial. The defendant does not question the accuracy of the statement that the duties imposed were nondelegable, but argues that the instruction bore upon no issue of the case because the "defendant never contended that it could delegate its duties". But the fact that the validity of an applicable rule of law is not challenged does not deprive the court of the right or duty to inform the jury of its existence. The instruction did not broaden the issues; it merely defined them. Its effect was to

limit rather than to extend the issues and we think it constituted a proper cautionary instruction. The giving of an instruction on nondelegability was not error, and while the instruction may have been somewhat over-emphasized, we cannot say that the jury were probably misled to the injury of the defendant. *Godvig v. Lopez,* 185 Or. 301, 202 P. 2d 935.

██ The third and last assignment of error is without merit. There was no plea of contributory negligence but the trial court submitted that issue to the jury, telling them, in substance, that it was not a defense but that it may be considered in mitigation. The defendant claims that the instruction left "out of consideration all those elements of negligence or contributory negligence which flow from the neglect of the ordinary human duty of every man to look after his own safety." The trial court had given the usual definition of negligence and it instructed the jury that if the plaintiff was guilty of negligence which proximately contributed in causing the accident, then the jury should take that matter into consideration in assessing damages. The defendant suggests, by way of illustration, that the court should have instructed the jury to determine whether the plaintiff negligently failed to look around and observe the tank, or whether it was negligent for him to turn his back upon it, etc. If the defendant had desired such specific instructions, he should have requested them. This he did not do. Contributory negligence is not a defense in cases under the Jones Act. *Socony-Vacuum Oil Co. v. Smith,* 305 U. S. 424, 83 L. Ed. 265. But the doctrine of comparative negligence obtains. *Beadle v. Spencer,* 298 U. S. 124, 80 L. Ed. 1082. Contributory negligence on the part of an injured workman may be relied on in

diminution of damages, notwithstanding contributory negligence has not been specially pleaded by the defendant. 35 Am. Jur., Master and Servant, § 487, p. 904; *Kansas City Southern Railway Co. v. Jones,* 241 U. S. 181, 60 L. Ed. 943.

Finding no reversible error, the judgment is affirmed.