Argued January 13, reversed and remanded February 24, 1960

# LAZZARI *v.* STATES MARINE CORPORATION

349 P. 2d 857

*William F. White,* Portland, argued the cause for appellant. With him on the brief were White, Sutherland & White, Portland, and Graham, James & Rolph, San Francisco.

*Nels Peterson,* Portland, argued the cause for respondent. With him on the brief were Philip A. Levin and Peterson, Pozzi & Lent, Portland.

Before McAllister, Chief Justice, and Warner, Sloan and Duncan, Justices.

SLOAN, J.

On June 14, 1955, the defendant corporation's merchant vessel, S. S. Cotton State, was at the dock in the port of Patras, Greece. The plaintiff was employed by defendant as boatswain on the vessel. He had direct supervision of a crew of eleven ordinary and

able-bodied seamen. At about 10:30 a.m. of that day plaintiff, with his crew, was engaged in preparing the deep tanks in the No. 4 hold to take on water ballast. At that approximate time the plaintiff received an order from the chief mate, his immediate superior, to "come up and leave four men down there to finish putting on the gaskets on the deep tanks so they would take water ballast, and take the rest of the men up and secure the ship for sea because we was leaving at 12 o'clock sharp." This order required plaintiff and the crew to swing in the cargo booms and secure them and to put tarpaulins on the cargo hatches and batten them. In the course of performing these tasks plaintiff received an injury which is the basis of this action. He recovered a verdict and judgment below; defendant appeals.

To visualize the nature of the accident it is necessary to describe as best we can the particular gear that plaintiff was handling and his function with it when the accident, which plaintiff claimed was the cause of his injury, occurred. The plaintiff's activity was demonstrated to the jury, in part, by reference to a ships' model exhibited in the courtroom. No one bothered to put in the record a description of the ships' model. The witnesses and counsel made numerous references to "here" and "there," "this" and "that". The transcript contains many notations by the court reporter that a witness was "demonstrating". The result is meaningless to us. The use of demonstrative evidence and exhibits may be excellent to educate a jury but it adds nothing but confusion to a written record unless explanation is made or the exhibit used is presented in evidence and intelligently used.

The vessel had discharged cargo at Patras from

four of the vessel's holds. In the process of unloading, dunnage from the holds was scattered about the deck. Some of the dunnage had been placed in a loose pile against the bulwark on the port side of the vessel somewhat forward of the No. 3 hatch. This pile was said to be about 3 or 4 feet high. The No. 3 hatch was immediately forward of the deckhouse. Suspended from one of the booms used at the No. 3 hatch was a "preventer wire". There was no adequate definition of a preventer wire nor of the precise purpose it serves. It was described as a wire rope about 7/8ths inches in circumference. At the free end was a 12 foot chain, of unknown size, and a shackle. This wire was hanging from the boom between the ship and the dock. It was necessary that the wire be pulled in and the shackle at the loose end be secured by a padeye on the deck at a point near the pile of dunnage already mentioned. This padeye was about 20 or 30 feet forward of the spot where the wire was hanging. It was estimated that the wire and shackle weighed about 70 to 80 pounds.

While his crew was working on the No. 3 hatch cover, plaintiff attempted to bring in and secure the preventer wire. He described his actions in this way:

"A   After I brought the boom in here the wire was hanging down between the ship and the dock with the chain, so I got ahold of it here and walked it up here (demonstrating), because up here we had to make it fast so that it could hold the boom. I walked it up here and then I stood on this pile of dunnage, one foot on the dunnage and one foot on the rail, and started pulling it up here (demonstrating), because that is where I had to make it fast. There was no use pulling it up down here (demonstrating)—"

\*   \*   \*   \*   \*

"A   Well, I got up here (demonstrating), I stood up on this pile of dunnage, one foot on the dunnage and one foot standing on the rail. Then I started to pull the wire up and my left foot slipped off the dunnage, or the dunnage slipped or something, I don't know, I don't remember, and gave me a twist like that (demonstrating), and I got ahold of the rail and let the wire go, I felt this pain in my back; so the fellow that was on the winch there he came over to me and he says, 'What is wrong?' and I told him that my foot slipped off and I hurt my back."

Other evidence would have permitted the jury to find that it would normally require a full crew of eleven men about three hours to perform the tasks plaintiff and his crew of seven were directed to do in an hour and a half. There was conflict in the evidence as to the time that could be required to perform the necessary work of securing the ship for sea. There was also difference of expert opinion about who had the duty to remove the piled and scattered dunnage. Defendant's witnesses indicated it was plaintiff's duty to dispose of it or remove it without additional orders from his superior. Plaintiff's witnesses testified that it was the responsibility of the chief mate to inspect and order any disposition of the dunnage that may have been necessary to render the deck of the ship seaworthy.

The plaintiff's complaint alleged that the ship was unseaworthy "in that the deck of said vessel was littered with 'dunnage', rendering said vessel unseaworthy and unsafe for this plaintiff." He also alleged three specific acts of negligence on the part of defendant:

"1. In failing and neglecting to provide a reasonably safe place for this plaintiff to carry on his work, in that certain pieces and piles of lumber,

known as 'dunnage', were allowed and permitted to remain on the deck of said vessel upon and around which plaintiff was required to perform the task aforesaid.

"2. In failing and neglecting to provide a sufficient number of workmen for the task aforesaid, in that two men should have been required to lift and maneuver said 'preventer wire'.

"3. In failing and neglecting to inspect the deck and premises and said 'preventer wire' at and prior to requiring this plaintiff to work in the performance of the task aforesaid."

■ Defendant's first assignment is directed at the failure of the trial court to direct a verdict in its favor. If this case were to be decided by common law rules only it would be readily apparent that plaintiff was guilty of contributory negligence and that would be the end of it. But we are governed by the federal law, both as enacted by Congress, 46 USCA, § 688, and as determined by the federal courts. *Allan v. Oceanside Lumber Co.*, 214 Or 27, 34, 328 P2d 327 (1958). Section 688 of Title 46, USCA, is known as the Jones Act. It incorporates into the maritime law provisions of the Federal Employers' Liability Act (45 USCA, §§ 51-60). *Allan v. Oceanside Lumber Co.*, supra. The latter act eliminates assumption of risk as a defense and limits contributory negligence to mitigation of damages only. In other words, comparative negligence. If the defendant is guilty of only the "slightest" negligence it becomes necessary for a jury to weigh the respective failures of the defendant and the injured workman and award damages accordingly. *Rogers v. Missouri Pacific R. Co.*, 352 US 500, 77 S Ct 443, 1 L Ed 2d 493 (1956). In *New York, New Haven & Hartford R. Co. v. Henagan*, 272 F2d 153, 157 (1st Cir 1959), Chief Judge Woodbury dis-

cussed the Rogers and similar cases. He concluded "that only the barest possibility of causation is enough to make out a case for the jury." He suggested that only the "faintest scintilla of evidence" is sufficient to deny a directed verdict on the issue of causation.

The same can be said of those cases which apply the test of seaworthiness:

> "* * * But the gradual disappearance from the unseaworthiness cases of any requirement of notice, which the Boudoin[1] opinion highlights by not even discussing the point, suggests strongly that the owner's absolute liability for anything that can be called unseaworthiness, as distinguished from a peril of the sea, will not be affected by the fact that the condition arose during a voyage, whether at a port of call or on the high seas, and whether or not the condition came, or ought to have come, to the attention of the master or an officer before the accident. [Poignant v. U. S., 225 F2d 595, 1955 AMC 1955, (2d Cir. 1955)]" Gilmore and Black, The Law of Admiralty, § 6-44, p 332.

In fact, any difference between negligence under the Jones Act and seaworthiness is evaporating:

> "When plaintiff is allowed to combine a Jones Act count with an unseaworthiness count and go to the jury on both, and when a resulting verdict in his favor will not be disturbed if it can be supported on either ground, it becomes immaterial whether plaintiff can bear even the attenuated burden of proof of negligence which the Jones Act case law requires. * * *" *idem.,* p 314.

The present case appears to be decisively controlled by *Davis v. Virginian R. Co.,* 361 US 354, 80

---

[1] *Boudoin v. Lykes Bros. S. S. Co., Inc.,* 348 US 336, 75 S Ct 382, 99 L Ed 354, 1955 AMC 488, one of the few unanimous opinions by the United States Supreme Court in deciding cases within this area of the law.

S Ct 387, 4 L Ed 2d 366, an action based on the Federal Employers' Liability Act. Davis was a yard conductor for the defendant railway company. On a given day he was ordered to "shift" or "spot" about 43 railway cars on the Ford Motor Company siding at Norfolk, Virginia. The evidence in the case indicated that the crew assigned to Davis to perform his task lacked competence and that the time allotted to complete the job was insufficient. The court held: "We think it should have been left to the jury to decide whether the respondent's direction to complete the spotting operation within 30 minutes plus the inexperience of the brakemen assigned to perform this 'hot job', might have precipitated petitioner's injury." The injury to Davis occurred when he fell from a ladder while descending from the roof of one of the cars. There was no indication that the ladder itself was in any way at fault. The shortage of time and crew was the deciding issue.

The reference already made to the evidence in the instant case establishes the similarity of this and the Davis case. We must conclude that it was for the jury to decide if plaintiff was "required" to do the acts charged in the manner complained of. Or, did plaintiff have full authority to order men to his assistance or to move the dunnage before anyone attempted to bring in the preventer wire? Was plaintiff's negligence the sole cause of his injury or only partially so? Whatever may be our own view of cases such as this we are bound to measure them against the more recent pronouncements of the United States Supreme Court:

> "The kind of misconception evidenced in the opinion below, which fails to take into account the special features of this statutory negligence action that make it significantly different from the or-

dinary common-law negligence action, has required this Court to review a number of cases. In a relatively large percentage of the cases reviewed, the Court has found that lower courts have not given proper scope to this integral part of the congressional scheme. We reach the same conclusion in this case. The decisions of this Court after the 1939 amendments teach that the Congress vested the power of decision in these actions exclusively in the jury in all but the infrequent cases where fair-minded jurors cannot honestly differ whether fault of the employer played any part in the employee's injury. Special and important reasons for the grant of certiorari in these cases are certainly present when lower federal and state courts persistently deprive litigants of their right to a jury determination." *Rogers v. Missouri Pacific R. Co.,* supra, 352 US, pp 509-510.

For the reasons stated the court did not err in refusing to direct a verdict for defendant.

■ However, other error requires that this case be tried again. The defendant presented a requested instruction that read, in part:

"If you should find from a consideration of all of the evidence that plaintiff was injured because he improperly handled the preventer wire in question or used the dunnage that was piled on the deck of the 'COTTON STATE' for the purpose for which it was not intended, then you must find that neither the preventer wire in question nor the dunnage piled on the deck made the ship unseaworthy."

The trial judge altered the instruction and read it to the jury in this manner:

"If you should find from a consideration of all of the evidence that plaintiff was injured because he improperly handled the preventer wire in question or used the dunnage that was piled on the deck of the COTTON STATE for the purpose for

which it was not intended, then you must find that the dunnage piled on the deck *made the ship unseaworthy.*" [Emphasis supplied]

The instructions otherwise gave much emphasis to the absolute liability imposed on the defendant if the jury found unseaworthiness. In fact, it could be said that the issue was unduly repeated. Consequently, the effect of the instruction, as given, literally required the jury to return a verdict for plaintiff. The error was called to the trial court's attention before the jury retired. After exceptions were taken, the court corrected other instructions given but not this one. If a shipowner is to sustain the high burden now imposed he is certainly entitled to a fair trial and correct instructions as to the law to be applied. The challenged instruction violates that right to a fair trial and the cause must be remanded for a new trial.

■ Assignments of error numbered VIII, IX and XI require mention. Each assignment is directed at the failure of the trial court to give an instruction as to the duty of plaintiff. Defendant, by the requests mentioned in these assignments, asked the court to tell the jury that if it found plaintiff, as boatswain, had the responsibility to direct his crew to move the dunnage before proceeding to perform the task causing his injury, then he could not recover. We think, from the evidence, that the jury could have found that plaintiff had the duty to order his crew to move the dunnage or come to his assistance or take any other action necessary to safely secure the preventer wire. The jury was not so instructed. The allegations of plaintiff's complaint confirm this view. Plaintiff alleged that he was "required" to move the preventer wire without help and was "required" to stand on the pile of dunnage. The defendant was entitled to instruc-

tions telling the jury that if it found that plaintiff was not required to perform these tasks in the manner alleged, then defendant was not liable. *Walker v. Lykes Bros. S. S. Co., Inc.,* 193 F2d 772 (2d Cir 1952); *Gold v. Groves,* 182 F2d 767 (3rd Cir 1949), particularly the separate opinion of Judge Alger Fee, 182 F2d at p 770; *Vileski v. Pacific-Atlantic S. S. Co.,* 163 F2d 553 (9th Cir 1947); *Reynolds v. Royal Mail Lines,* 147 F Supp 223 (SD Calif 1956). The instructions should be corrected upon retrial.

We think, also, that defendant's criticism of the instruction set out in assignment X is well taken, but requires no comment.

Reversed, new trial ordered.