Argued October 12, reversed and new trial granted
December 13, 1961

# GENTRY *v.* STATES STEAMSHIP COMPANY

366 P. 2d 880

234

*Philip A. Levin,* Portland, argued the cause for appellant. On the brief were Pozzi, Levin & Wilson, Portland.

*Erskine Wood,* Portland, argued the cause for respondent. On the brief were Wood, Wood, Tatum, Mosser & Brooke, Portland.

Before McAllister, Chief Justice, and Warner, Sloan, O'Connell and Brand, Justices.

BRAND, J.

The plaintiff Gentry, a seaman employee of the defendant, brings this action against the States Steamship Company to recover general damages and loss of wages on account of an alleged injury suffered by him upon the defendant's ship. The case resulted in a verdict and judgment for the defendant, and plaintiff appeals.

The complaint alleges that the case is brought under the Jones Act, 46 USCA, § 688. It may better be said that the case is under the Maritime Law as supplemented by the Jones Act.

In the complaint plaintiff alleges that the defendant corporation owned and operated the merchant vessel SS Montana. The allegation is admitted. Plaintiff alleges that on September 30, 1959 he was employed aboard said vessel as a seaman. Defendant admits that on the day alleged, plaintiff was employed as chief electrician aboard said vessel. All other allegations of the complaint are denied. Those allegations are that on said date plaintiff "was caused to slip and fall while carrying a box of stores down a ladder." We quote further:

"III.

"That at the time and place of said occurrence, the above named defendant corporation was negligent, careless and reckless in and said vessel and its apurtenances (sic) were unseaworthy in one or more of the following particulars:

"1. Said vessel was unseaworthy in that there was oil, grease and debris and pickle juice on said ladder, rendering it very slippery and dangerous."

Specifications of negligence numbered 2 to 6 inclusive allege negligence, as follows:

"2. * * * in having said ladder in a condition where it contained oil, grease and pickle juice rendering it extremely hazardous and slippery.

"3. * * * in failing to properly inspect said work area before requiring this plaintiff to perform his work thereon.

"4. * * * in failing to warn said plaintiff of the slippery and dangerous condition and foreign debris on said ladder.

"5. * * * in failing to clean up said debris * * * before requiring this plaintiff to perform his work thereon.

"6. * * * in failing to provide this plaintiff with a safe place to work * * *."

The complaint then alleges injury and damages suffered as a proximate result of the negligence of defendant and of the unseaworthiness of the vessel.

On the return from a journey on the Montana, plaintiff was checking stores that were coming aboard for the next voyage. That was done at the storeroom on the shelter deck. He checked stores in the morning. There is also a storeroom for pickles, jams and coffee and nonperishables on the port side at the base of the stairway on the shelter deck, which is below the main deck. Also on the shelter deck is located the electrician's shop.

Plaintiff was the electrician. He testified that at 4:30 in the afternoon he was carrying a box of stores down to the storeroom or shop, and that he had not been down to the shop since morning. He states that the box contained electrical parts weighing 30 or 40 pounds and was about two feet long, a foot-and-a-half deep and a foot wide. As he descended the stairway, he testified, "I had the box under my left arm and

my hand on the handrail going down forward," the "normal way" of descending. There are between 12 and 14 steps on the stairway. Plaintiff testified:

"A  I slipped when I was about halfway down the steps and caught my arm, and then my arm hit - - my hand hit the stanchion of the post and I fell the rest of the way to the bottom of the ladder.

"Q  In the fall did you break yourself - - the fall, I should say, with your right arm at all?

"A  Yes, sir.

"Q  What was the position of your arm when you got the weight of the body?

"A  It was back up - - twisted back up behind me.

"* * * * *

"A  When I picked myself up and I had something wet over me, so I walked back up and - - the ladder was even with me and I checked it. I thought somebody busted a case of pickles or something when they was taking the stores.

"Q  Could you describe what you saw on the step or steps?

"A  Well, there was a couple of steps that were completely wet and slick. I couldn't say what it was, but just an opinion I had at the time * * *."

Plaintiff said he had no knowledge as to the condition of the stairway before he descended and doesn't know what the "stuff" was on the ladder. He does not know that any ship's officer knew of the condition. Plaintiff asserts that the "stuff was not on the stairway or ladder that morning." Plaintiff did not report his injury until the following morning. No one witnessed the fall.

One other witness testified that the ladder was "shiny like something had been spilled on it" when he saw it in the middle of the afternoon, but he had

noticed nothing when he used it in the morning. Aside from the evidence that there was nothing on the steps in the morning, there is no evidence as to whether the liquid, if any, had been on the steps for a few minutes or for several hours.

Plaintiff assigns error in that the court refused to give requested instructions numbered 2, 9, 10 and 11. We shall compare portions of the requested instructions with the instructions, if any, given by the court upon the same points:

ASSIGNMENT OF ERROR NO. 1.

PLAINTIFF'S REQUESTED INSTRUCTION NO. 2: "Under the Maritime Law, every shipowner or operator owes to every seaman employed aboard a vessel the duty to keep and maintain the ship in a seaworthy condition at all times."

INSTRUCTION GIVEN: "Now, it is the duty under the law that the owner of a ship or vessel which is used in navigation and for business purposes to keep and maintain his ship in a seaworthy condition at all times. * * *"

The instruction given sufficiently covered the one requested.

REQUESTED INSTRUCTION NO. 2: "To be in a seaworthy condition means to be in a condition reasonably suitable and fit to be used for the purpose or use for which provided or intended."

INSTRUCTION GIVEN: "To be in a seaworthy condition means to be in a condition reasonably suitable and reasonably fit to be used for the purpose for which it is provided - - for which it is provided and intended."

The instruction given is substantially identical to the request.

REQUESTED INSTRUCTION NO. 2: "Liability for an unseaworthy condition does not in

any way depend upon negligence or fault or blame. That is to say, the shipowner or operator is liable for all injuries and consequent damage proximately caused by an unseaworthy condition existing at any time, even though the owner or the operator may have exercised due care under the circumstances and may have had no notice or knowledge of the unseaworthy condition which proximately caused the damage."

INSTRUCTION GIVEN: "Now, there's two charges in this case that the plaintiff has laid out, one is unseaworthiness and the other is negligence. Irrespective of whether it was seaworthy or not, there was negligence on the part of the ship, and that you must determine by a preponderance of the evidence as I have already instructed you."

The court also instructed that "plaintiff is entitled to recover in this case if he proves that the defendant was negligent or that the vessel was unseaworthy." The court also instructed on the duty of "providing at all times to the plaintiff a reasonably safe working place for the plaintiff during his service on the vessel as a member of the crew." But this instruction confused the issue of negligence with the issue of seaworthiness. The court instructed that the test was that of a

"person * * * of ordinary prudence and care, if it was not a safe place it would be negligence on the part of the defendant, and if it was an unseaworthy condition it would be negligence on the part of the defendant also. * * *"

The court further elucidated by instructing that defendant had a

"duty to warn the plaintiff of any potentially dangerous situation which the defendant corporation knew or with reasonable care and prudence should have known could have constituted a hazard * * *"

Thus the court clearly tied the instruction to negligence, not seaworthiness. Comparison of the instruction requested with those given demonstrates that the latter did not with clarity cover the substance of the former. The instruction requested and last quoted supra is in substantial accord with the recent pronouncements of the United States Supreme Court, later to be discussed.

> REQUESTED INSTRUCTION NO. 2: "Furthermore, the duty to keep and maintain the ship in a seaworthy condition is not any less with respect to an unseaworthy condition which may be only temporary, or which may have been in existence only a very short period of time. If the condition of the ship in this case was unseaworthy, as I have defined that term for you, the shipowner or operator is liable for all injuries and consequent damage proximately caused by such condition, regardless of the length of time such condition may have existed."

> INSTRUCTION GIVEN: "In maritime law the equipment on a ship is said to be seaworthy when it is reasonably fit for the purposes for which it is intended to be used. It does not have to be perfect. It may have some minor defects or some temporary condition, but if in spite of such defects or such conditions it is still reasonably fit for the use intended it is seaworthy."

Reference to the instruction given discloses only a single comment on "some temporary condition." It certainly did not cover the rule as asserted in the requested instruction. The requested instruction raises a serious and highly debatable question. As indicated, the alleged slippery material on the step of the ladder may have existed for only a few minutes, and there is no one who claimed to know when it was created, or what it was, save only that there is evidence that the

alleged condition did not exist at some unspecified time in the morning.

If a slippery step constitutes "unseaworthiness," and if the duty to maintain the step in a seaworthy condition includes the duty to compensate for such a temporary defect of which the defendant knew, and could know, nothing, and the period of existence of which is not shown, then, the modern seaman, as a ward of admiralty enjoys a tender solicitude on the part of the law unknown to any other class of people. Under such a rule a nonnegligent shipowner falls into a class with the keeper of an undomesticated lion who knows of its dangerous propensities and allows it to escape, to the injury of another, and who, under old rules now sharply under fire, was held liable regardless of negligence, or in the class with a defendant who conducts blasting operations to the destruction of a neighbor's home. *Bedell et ux v. Goulter et al,* 199 Or 344, 261 P2d 842. See 3 CJS, Animals, § 143, page 1243, and supplement. One would assume that compensation in such cases, even in admiralty, would be provided under a statutory system akin to workmen's compensation laws rather than by the judicial application of the *Fletcher v. Rylands* doctrine in a novel field, and to cases in which the defendant is not chargeable with misfeasance or with the maintenance through nonfeasance of any condition of peril known to him or which should be known.

This brings us to the mooted question of the relation between negligence and unseaworthiness.

All agree that in the field of admiralty, as supplemented by The Jones Act, we are "governed by the federal law, both as enacted by Congress, 46 USCA, § 688, and as determined by the federal courts." *Lazzari v. States Marine Corp.,* 220 Or 379, 384, 349 P2d

857; *Allan v. Oceanside Lumber Co.,* 214 Or 27, 34, 328 P2d 327; *Greenhaw v. Pacific-Atlantic SS Co.,* 190 Or 182, 224 P2d 918; *Wychgel v. States Steamship Co.,* 135 Or 475, 296 P 863, cert denied 284 US 625, 76 L ed 533; *Macomber v. De Bardeleben Coal Co.,* 200 La 633, 8 So2d 624, cert denied 317 US 661, 87 L ed 532; *Doucette v. Vincent,* 194 F2d 834.

What constitutes unseaworthiness, and in what respect it differs from negligence, are matters of comparatively recent development. The modern rule stems from the decision of the United States Supreme Court in *The Osceola,* 189 US 158, 47 L ed 760 (1903). Plaintiff seaman brought an action in rem charging negligence in that the master of the ship ordered a procedure which under the evidence was dangerous, with resulting injury to plaintiff. The case was before the Supreme Court on questions certified to it by the Circuit Court of Appeals. The court held:

> "2. That the vessel and her owner are, both by English and American law, liable to an indemnity for injuries received by seamen in consequence of the unseaworthiness of the ship, or a failure to supply and keep in order the proper appliances appurtenant to the ship. Scarff v. Metcalf, 107 N.Y. 211, 13 N.E. 796.
>
> "* * * * *
>
> "4. That the seaman is not allowed to recover an indemnity for the negligence of the master, or any member of the crew, but is entitled to maintenance and cure, whether the injuries were received by negligence or accident." 47 L ed 764.

A full consideration of the reasoning of the court leaves the reader in doubt as to what were considered to be the elements of unseaworthiness and whether there was liability therefor in the total absence of any evidence of failure to use due care. The only case

cited by the Supreme Court in support of its proposition "2" supra, was *Scarff v. Metcalf*, cited supra, which recognized the existence of an element of negligence in unseaworthiness cases. The federal cases, both before and after the decision in the Osceola, recognized that the liability for defects in the ship's structure, i.e., for unseaworthiness, arose only in event of failure of due diligence. See 39 Cornell Law Quarterly, 392, and cases cited.

The next development of significance appears in a dictum by Justice McReynolds in *Carlisle Packing Co. v. Sandanger*, 259 US 255, 66 L ed 927 (1922). The Washington Supreme Court (112 Wash 480, 192 P 1005) had followed the Osceola case and held that unseaworthiness arose from the negligence of the shipowner who permitted the vessel to sail with gasoline in a kerosene can which exploded. The dictum was to the effect that "without regard to negligence, the vessel was unseaworthy * * *." Notwithstanding the dictum, the courts continued to treat unseaworthiness as involving an element of negligent failure. Other cases, however, gave additional support to a novel doctrine of "absolute warranty" of seaworthiness, regardless of any element of negligence. See, *The H. A. Scandrett*, 87 F2d 708 (1937) (dictum by Judge Augustus Hand); *Mahnich v. Southern SS Co.*, 321 US 96, 88 L ed 561 (1944) (dictum); and, *Sieracki v. Seas Shipping Co., Inc.*, 149 F2d 98, 328 US 85, 90 L ed 1099 (1945) (involving a latent defect unknown and not discernible). Since 1945 and despite the weakness of its origins, the rule of "absolute continuing" and nondelegable duty to keep the ship seaworthy, regardless of any element of negligence, has been upheld.

In *Petterson v. Alaska SS Co., Inc.*, 205 F2d 478 (9th circuit) the United States Court of Appeals held

that "The liability of the shipowner to the seaman for injuries resulting from unseaworthiness does not depend upon negligence. It is absolute." The case was affirmed per curiam in *Alaska Steamship Co. v. Petterson,* 347 US 396, 98 L ed 798 (1954).

Vigorous dissents have not availed to stem the tide of judicial generosity to seamen. In *Boudoin v. Lykes Brothers SS Co.,* 348 US 336, 99 L ed 354 (1954) the court said, "The warranty of seaworthiness is a species of liability without fault." It extended such liability to a case of assault by a seaman having "a proclivity for assaulting people." See annotation, 99 L ed 359 at 360.

In *Poignant v. United States,* 225 F2d 595, a stewardess stepped on an apple skin in a passageway. Defendant had no notice, actual or constructive, and the stewardess had no case under The Jones Act for negligence, but there being evidence of unseaworthiness by reason of failure to provide garbage chutes, the case was sent back for a new trial. The ruling was that prior notice, actual or constructive, of the unseaworthy condition, is not essential on the issue of unseaworthiness.

In February 1960 this court decided *Lazzari v. States Marine Corp.,* supra. The plaintiff, a seaman, sustained injuries on the ship when his foot slipped off dunnage on which he was standing while assisting the crew in preparation for departure. The plaintiff alleged that the ship was unseaworthy and also that defendant was negligent. The court properly recognized that we are bound by the federal decisions. It then said:

"* * * If the defendant is guilty of only the 'slightest' negligence it becomes necessary for a jury to weigh the respective failures of the de-

fendant and the injured workman and award damages accordingly. Rogers v. Missouri Pacific R. Co., 352 US 500, 77 S Ct 443, 1 L Ed 2d 493 (1956). In New York, New Haven & Hartford R. Co. v. Henagan, 272 F2d 153, 157 (1st Cir 1959), Chief Judge Woodbury discussed the Rogers and similar cases. He concluded 'that only the barest possibility of causation is enough to make out a case for the jury.' He suggested that only the 'faintest scintilla of evidence' is sufficient to deny a directed verdict on the issue of causation.

"The same can be said of those cases which apply the test of seaworthiness:

"'* * * But * * *,' " etc. *Lazzari v. States Marine Corp.,* 220 Or 379 at 384.

We are uncertain as to whether the last comment was intended to cover the rule concerning the necessity of the slightest negligence or only to cover the rule concerning causation. The court then quoted from *Poignant v. United States,* supra, and added: "In fact, any difference between negligence under the Jones Act and seaworthiness is evaporating: * * *." The comment might well be misunderstood. It is true that a defect on a ship may often be the result of actionable negligence and may also give rise to a cause of action for unseaworthiness, even if the plaintiff fails to bear the " 'attenuated burden of proof of negligence which the Jones Act case law requires. * * *' " 220 Or at 385. In this respect one may say that the difference between negligence and seaworthiness is evaporating. This, we think, is all that the court meant to imply.

On the other hand, the difference between a Jones Act case and an unseaworthy case is greatly accentuated by the authoritative federal cases cited supra which have discovered and applied the doctrine of absolute and continuing warranty of seaworthiness

regardless of any element of negligence, while still requiring proof of negligence in cases under The Jones Act.

The statement in *Lazzari v. States Marine Corp.*, supra, that the "difference between negligence under the Jones Act and seaworthiness is evaporating" was intended only as a comment on the tendency of the federal courts under the Jones Act to hold the defendant liable for only "the slightest negligence."

In *Michalic v. Cleveland Tankers, Inc.*, 5 L ed2d 20 (Nov. 1960) a seaman sued for personal injuries sustained by him when he dropped a wrench on his left great toe. The action was based both on The Jones Act and on unseaworthiness. It was held that under the doctrine of seaworthiness a vessel's duty to furnish seamen with tools reasonably fit for their intended use is absolute. This duty is completely independent of the owner's duty under The Jones Act to exercise reasonable care. The court quoted with approval from *Cox v. Esso Shipping Co.*, (CA 5 Tex) 247 F2d 629, as follows:

> " 'One is an absolute duty, the other is due care. Where \* \* \* the ultimate issue \* \* \* [is] seaworthiness of the gear \* \* \*. The owner has an absolute duty to furnish reasonably suitable appliances. If he does not, then no amount of due care or prudence excuses him, whether he knew, or could have known, of its deficiency at the outset or after use. In contrast, under the negligence concept, there is only a duty to use due care, i.e., reasonable prudence to select and keep in order reasonably suitable appliances. Defects which would not have been known to a reasonably prudent person at the outset, or arose after use and which a reasonably prudent person ought not to have discovered would impose no liability.' 247 F2d, at 637."

■ Under these controlling authorities we hold that the court in the pending case erred in failing to give the requested instruction to the effect that there is liability for unseaworthiness even though the owner may have exercised due care and may have had no notice of the unseaworthy condition.

■ Referring back to the requested instruction supra to the effect that a temporary defect "which may have been in existence only a very short period of time" renders the shipowner liable if it results in unseaworthiness, we hold that the instruction given did not cover the specific point made in the request, i.e., that the length of time during which a defect existed is wholly immaterial. Solely on the basis of compulsive authority we hold that the requested instruction should have been given.

■ In *Mitchell v. Trawler Racer, Inc.,* 362 US 539, 4 L ed2d 941, 948, the court said:

"There is no suggestion in any of the decisions that the duty is less onerous with respect to an unseaworthy condition arising after the vessel leaves her home port, or that the duty is any less with respect to an unseaworthy condition which may be only temporary. Of particular relevance here is Alaska S.S. Co. v. Petterson, 347 US 396, 98 L ed 798, 74 S Ct 601, supra. In that case the Court affirmed a judgment holding the shipowner liable for injuries caused by defective equipment temporarily brought on board by an independent contractor over which the owner had no control. That decision is thus specific authority for the proposition that the shipowner's actual or constructive knowledge of the unseaworthy condition is not essential to his liability. That decision also effectively disposes of the suggestion that liability for a temporary unseaworthy condition is different from the liability that attaches when the condition is permanent.

"* * * What has evolved is a complete divorcement of unseaworthiness liability from concepts of negligence * * *."

REQUESTED INSTRUCTION NO. 9: "A shipowner has an absolute duty to the seaman working on board the ship to furnish reasonably suitable appliances. If it does not do so, then no amount of due care or prudence excuses it, whether it knew, or could have known, of the deficiency at the outset of after use.

"Therefore, in this case, if you find that the defendant furnished a ladder which was not reasonably suitable for the purposes for which it was intended, and if you further find that plaintiff was injured as a proximate result of such failure, or that such failure contributed in any degree to cause damage to the plaintiff, then you will find your verdict in favor of the plaintiff, Charles Gentry, and against the defendant corporation."

INSTRUCTION GIVEN: "In respect to the duty of the defendant to furnish seaworthy appliances, the duty of the ship owner does not end with supplying them. He must keep them in order. Therefore, in this case if you find the defendant failed to keep the ladder in proper condition for use, and that such failure was in whole or in part a proximate contributing cause of the injury to the plaintiff, then you must find your verdict in favor of the plaintiff and against the defendant corporation subject to the later instructions that I will give you."

The instruction given sufficiently covered the substance of the one requested.

PLAINTIFF'S REQUESTED INSTRUCTION NO. 10: "You are instructed that an employer in the position of the defendant corporation in this case, owes to the seamen performing work aboard the vessel, and in this case the plaintiff, Charles Gentry, the duty of providing them with a reasonably safe place to work. This duty is a continu-

ous, positive and non-delegable duty, a breach of which constitutes negligence."

This request was obviously directed to the issue of negligence, not seaworthiness, yet it omits any reference to the rule that defendant could be held liable for negligence only if he knew or reasonably should have known of the defect. It tended to define negligence as identical to unseaworthiness. No error was committed in failing so to instruct.

■ By plaintiff's requested instruction No. 11, the court was asked to instruct that the duty of the defendant with respect to the safety of seamen is non-delegable. The courts have so held. The instruction was, however, merely cautionary and cumulative. No reversible error was committed in failure to so instruct.

■■ The plaintiff assigns error in the giving of the following instruction by the trial court:

"One of the allegations of the plaintiff is that he slipped from the ladder because it was unseaworthy. This is a maritime case, and as you may not be familiar with the term, I will define it for you so that you may know what seaworthiness means and what its opposite, unseaworthiness, means.

"In maritime law the equipment on a ship is said to be seaworthy when it is reasonably fit for the purposes for which it is intended to be used. It does not have to be perfect. It may have some minor defects or some temporary condition, but if in spite of such defects or such conditions it is still reasonably fit for the use intended it is seaworthy.

"In this particular case if the ladder was reasonably fit for the plaintiff to use it, then it was seaworthy. On the other hand, if it was not reasonably fit for him to use it, it was unseaworthy. In

this connection you may consider that the plaintiff was an experienced seaman and presumed to be accustomed to the use of ladders of the type generally used on ships, but notwithstanding that fact, if it was an unseaworthy ladder it would still be entitled to be considered for damages."

We find no error in the first two paragraphs of the quoted instruction. Granted that a temporary condition may be such as to render a ship unseaworthy, it does not follow that every temporary and minor defect renders a ship unseaworthy. All the court said was that if the equipment is reasonably fit for the use intended it is seaworthy, although there be some minor condition, temporary or otherwise. As the court said in *Mitchell v. Trawler Racer,* supra, "The standard is not perfection, but reasonable fitness:  *  *  *." 4 L ed2d at 948. See also, *Blier v. United States,* 286 F2d 920 (2d Cir 1961). As to the third paragraph of the quoted instruction, we find an unfortunate ambiguity. The jury was told that they might consider that plaintiff was an experienced seaman and presumed to be accustomed to such ladders. The instruction related to seaworthiness, not to negligence, and we fear that presumptions as to the familiarity of the particular seaman with ladders is not relevant to the question of seaworthiness, and therefore should not be "considered," as the trial court said.

## ASSIGNMENT OF ERROR NO. 2.

In this case the trial court instructed that if plaintiff "was hurt by the combined negligence of his own self and the defendant, then any damages that you might award him should be diminished in such proportion as his own negligence bears to the combined negligence of himself and the defendant." In view of

the fact that such instruction was given, the plaintiff contends that the court should have instructed the jury that plaintiff could not be charged with assuming the risks and dangers caused by the negligence, if any, of the defendant. The plaintiff requested two such instructions, which were refused.

In *Allan v. Oceanside Lumber Co.*, 214 Or 27, 328 P2d 327, this court reviewed the authorities and held in a case under The Jones Act that contributory negligence is not a defense but may be relied on in diminution of damages, although there was no plea of contributory negligence. It was therefore proper for the court to instruct on comparative negligence if there was any evidence of negligence on the part of plaintiff proximately contributing to his harm. Under these circumstances an instruction on assumption of risk such as those requested would be proper if there was any evidence that plaintiff assumed the risk which arose from defendant's alleged negligence. There is no such evidence.

In the case of *Socony-Vacuum Oil Co. v. Smith*, 305 US 424, 83 L ed 265 (1939), an action under The Jones Act, the United States Supreme Court made it clear that it is the making use of a defective appliance, knowing that it is defective, which constitutes assumption of risk and which is no defense under The Jones Act. See, 16 New Oregon Digest, Master and Servant, § 217. There being no evidence that plaintiff either knew or appreciated any danger arising from the alleged negligence, there was no necessity for an instruction negativing assumption of risk as a defense. No error was committed in failing to give an abstract instruction on that subject.

## ASSIGNMENT OF ERROR NO. 3.

Plaintiff complains of the reception of testimony by the witness Johnson, a representative of the defendant company, to the effect that he had a conversation with the representative of the Union, who told him that the Union had decided that plaintiff had been discharged *with cause*. We take it that Johnson's testimony was hearsay. The question is, was it prejudicial?

■ The plaintiff was discharged for cause on the morning of the day on which he claims to have fallen. The entire subject concerning plaintiff's discharge or the causes for it was irrelevant on any issue of the case, save only as it may have affected his credibility, his motives, and his ill will toward the defendant. A written statement by the defendant as to the reasons for plaintiff's discharge was already in evidence. It had been made in accordance with the usual practice and pursuant to demand therefor by the plaintiff. Plaintiff admitted using "a great deal of profane language" in a dispute with the Chief Engineer on the day of the alleged fall. The return of a verdict for the defendant when the only evidence in the record came from the plaintiff and one partially supporting witness, suggests that credibility was a live issue in the case. The testimony of Johnson under these circumstances would not of itself require a new trial.

The entire record as to the manner in which the court repeatedly confused the issue of unseaworthiness with that of negligence does require a new trial. Other circumstances emphasize the error in this respect. On one occasion the court instructed as follows:

"Now, in regard to the allegation that there was some slippery substance upon the steps. The de-

fendant cannot be charged with negligence in that respect unless you find these certain things:"

Then followed an enumeration of the various elements which must be proven in a negligence case. Among other elements, the court said: "fourth, that it had been there long enough for the defendant to have found out about it and then removed it." The court concluded, "Unless you find those things *the defendant would not be responsible for this condition.*" (Italics ours). The instruction, although strictly correct on the negligence issue, added to the confused condition of the record on the vital distinction between negligence and unseaworthiness.

We reluctantly hold that the judgment should be reversed and a new trial granted.

10. Assuming, without deciding, that a plaintiff must in all cases in a state court under The Jones Act, allege both negligence and unseaworthiness, it is at least clear that he may rely upon both theories. When he so relies, it is the duty of the trial court to instruct on each theory systematically and separately, making clear the distinction between the two. This the trial court failed to do.

Judgment is reversed and a new trial ordered.