Argued July 11, affirmed December 13, 1967, petition for
rehearing dismissed January 16, 1968

# KINNEY, *Respondent, v.* GENERAL CON-
# STRUCTION COMPANY, *Appellant.*

435 P. 2d 297

*Lloyd W. Weisensee,* Portland, argued the cause for appellant. With him on the briefs were Gray, Fredrickson & Heath, Portland.

*Philip A. Levin,* Portland, argued the cause for respondent. With him on the brief were Pozzi, Levin & Wilson, Portland.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

## HOLMAN, J.

This is an action to recover damages for personal injuries which was brought by an employee against his employer for negligence under 46 USCA (The Jones

Act) and under the doctrine of unseaworthiness in accordance with general maritime law. A jury trial resulted in a verdict for plaintiff in the sum of $3,900 special damages and $48,000 general damages. Defendant appealed.

Plaintiff was employed as a deckhand on defendant's tug "Tillie." The "Tillie" was furnishing motive power for defendant's dump barge which was being used to transport bottom materials from the scene of a dredging operation. It was plaintiff's job to handle the lines on the barge and to keep its deck clean. The barge was moored to the dredge during loading by a spring line which was operated from a winch on the dredge. The line was bent around a steel-jacketed post about 18 inches in diameter and 30 inches high which was located on an upstream corner of the barge. Loading commenced into the downstream end of the barge and as the loading proceeded forward, the barge was positioned by slacking off the line. As the barge was loaded it sank lower in the water and the angle of the line from the dredge to the mooring post on the barge became more acute. There was no cap or cleat on the top of the post to keep the line from slipping off. The mooring line slipped from the post and in so doing whipped the plaintiff across the back and threw him against a bulkhead on the barge causing the injuries in question.

■■ With one exception, all assignments of error relate to instructions which the court either gave or failed to give. The first two assignments of error will be given no consideration because they relate to matters to which an insufficient exception was taken. The purpose of an exception is to inform the trial judge of the reason the instruction should not have been given so that he will have an informed oppor-

tunity to reconsider the matter. The first assignment of error relates to an instruction to which an exception was taken but no reason was given therefor, and the second assignment relates to a failure to instruct where no instruction was requested.

■ Defendant's third specification of error in reality contains two specifications. The first is the claim that the following instruction was faulty:

> "Now, let us take up some of the charges of negligence which plaintiff makes against the defendant:
> "Plaintiff charges defendant in failing to provide a corner post on said barge without a cap, cleat or knob with which to secure the wire rope.
> "Now, a barge owner has an absolute duty to seamen working on board a barge to furnish reasonably suitable appliances. If he does not do so, then no amount of due care or prudence excuses him, whether he knew, or could have known, of the deficiency at the outset or after use.
> "Thus if you find that the defendant furnished a post which was not reasonably suitable for the purpose for which it was intended, and you further find that the plaintiff was injured as a proximate result of such failure, or that such failure contributed to any degree to cause the damage or injury, then the defendant would be negligent in that particular."

There is no doubt that the instruction was erroneous because it confused unseaworthiness and negligence. It, in effect, told the jury that defendant had an absolute duty, regardless of the degree of care exercised, to furnish a proper post on the barge and that if it did not do so, it was negligent. However, the exception that was taken to the instruction was as follows:

> "MR. WEISENSEE: Your next instruction which I want to except to is the first one on negli-

gence, regarding the defendant has a duty to furnish reasonably suitable appliances. I can't—I couldn't write any more—I was trying to listen to it—but I think it was the first one under negligence, and it had no reference to any charge in the case. It was just a general instruction on furnishing reasonably suitable appliances, so I believe that would be an improper instruction, and I except to it for that reason."

The suitable appliance instruction which was objected to was immediately preceded and had reference to the specification of negligence "*  *  * failing to provide a corner post on said barge without a cap, cleat or knob with which to secure the wire rope." Therefore, defendant's exception that the instruction did not refer to a specific charge of negligence did not reach the defect in the instruction. The court was not apprised of the defect so that it had an opportunity to rectify it.

■ In addition, the distinction between negligence and unseaworthiness in relation to the corner post on the barge is really immaterial. The doctrine of unseaworthiness, which is a form of liability without fault,[1] is applicable to any defect in the post caused by its lack of a cap. Thus, insofar as the allegation in question is concerned, the doctrine of liability without fault has swallowed that of negligence. The following statement is found in Gilmore & Black, The Law of Admiralty, Ch VI, p 320 (1957):

"*  *  * And unseaworthiness has come to include not only such obvious things as defects in the structure of the ship and in the ship's machinery, appliances, furnishings, equipment and tackle, but even

[1] Seas Shipping Co. v. Sieracki, 328 US 85, 94-95, 66 S Ct 872, 90 Led 1099 (1946), reh den 328 US 878, 66 S Ct 1116, 90 Led 1646 (1946).

the fact that the ship's company includes incompetent officers and crew. The only case which is today clearly outside the scope of the unseaworthiness doctrine is the almost theoretical construct of an injury whose only cause is an order improvidently given by a concededly competent officer on a ship admitted to be in all respects seaworthy."

■ The second instruction which was claimed objectionable by the third specification of error was as follows:

"You are instructed that an employer in the position of the defendant corporation in this case owes to its employees, seamen, and in this case the plaintiff, the duty of providing him with a reasonably safe place to work. This duty is a continuous, positive and non-delegable duty, a breach of which constitutes negligence."

The instruction is virtually identical to an instruction set forth in *Gentry v. States Steamship Co.,* 229 Or 233, 248-249, 366 P2d 880 (1961). In that case it had been requested by the plaintiff and refused. The court held the refusal to be proper and pointed out that it was erroneous because it was directed to the issue of negligence and not unseaworthiness, yet it omitted any reference to the rule that defendant could be held liable for negligence only if defendant knew or reasonably should have known of the defect. The opinion recognized that it would have been proper if given in relation to an instruction on unseaworthiness, since it stated: "It tended to define negligence as identical to unseaworthiness." Also see *Interocean S. S. Co. v. Topolofsky,* 165 F2d 783, 784 (CA 6th Cir 1948), which states: "* * * Appellant had the duty of furnishing appellee a safe place in which to work and was responsible for a seaworthy ship and safe equipment. * * *"

■ The instruction having been incorrect, it remains to determine whether the exception taken to it was sufficient to apprise the court of its error, and if it was, whether the giving of it was reversible error considering the context in which it was used and the other instructions that were given. The exception was taken as follows:

"MR. WEISENSEE: Then you also gave an instruction on 'safe place to work,' and that wasn't charged and I—

"THE COURT: Well, that was in respect to unseaworthiness.

"MR. WEISENSEE: You gave two instructions on that.

"THE COURT: Well, unseaworthiness—

"MR. WEISENSEE: I except to the instruction on 'furnishing of a safe place to work.'

"THE COURT: —and non-delegable as part of that."

The exception was apparently taken on the basis that the instruction was wrong because there was no separate allegation that the defendant had failed to furnish a safe place to work as part of plaintiff's claim of negligence. To the exception, the court responded that the instruction had been given in respect to unseaworthiness. Defendant should then have pointed out that if it had been intended as part of the instruction on unseaworthiness the court had inadvertently used the term "negligence" rather than "unseaworthiness" as the last word of the instruction. The import of the instruction was that defendant owed a duty to plaintiff to furnish him a safe place to work, which was correct. The fact that the breach of the duty was called "negligence" rather than "unseaworthiness" would not seem to us to be sufficiently prejudicial to

merit reversal of the case. The substance of the instruction was correct, the terminology used was wrong. In addition, the instruction was given in connection with the instructions on unseaworthiness and not in connection with those on negligence. Also, the jury was told that defendant was charged with the three specific grounds of negligence set forth in the plaintiff's complaint and that each party was limited in the contentions made in their pleadings. If the instructions are taken as a whole we do not believe the error was prejudicial.

Defendant next assigns as error the giving of an instruction in which the jury was told that they could reimburse plaintiff for "* * * such sums as will reasonably compensate the plaintiff for any impairment of earning capacity resulting from the injury which it is reasonably probable the plaintiff will suffer in the future; * * *." Defendant contends there was no evidence from which the jury could find that there would be any impairment of future earning capacity. There was evidence of plaintiff's previous earnings as a deckhand. Also there was evidence that plaintiff sustained a serious strain of the neck and back. Upon being released to work he could not get employment as a deckhand so he secured a job at work which the jury could have found was of a lighter nature than his former employment. At the time of trial, a year-and-a-half after his injury, while working at the new job he had trouble sleeping, pain tended to settle at the base of his neck, and if he moved quickly or in the "wrong direction" the pain flared up. A doctor testified that if, at the time of trial, he was still unable to return to the same type of work because of weakness, pain, stiffness or other reason, that he would consider the disability permanent.

■ The foregoing evidence is sufficient to submit impairment of future earning capacity. The jury could infer that if plaintiff was having his present difficulties while at a lighter job, they would have prevented or handicapped him from performing his heavier job as a deckhand and therefore, in accordance with the doctor's testimony, that the injuries were permanent. It is significant that defendant took no exceptions to the court's instructions on permanent injury. The jury could infer that his future earning capacity would be impaired by virtue of the daily continuation of pain, difficulty from sudden movements, and loss of rest.

■ Defendant also contends that there was no evidence which would enable the jury to evaluate the impairment from a monetary standpoint and that the court's instructions failed to give the jury any such guide. The impairment of future earning capacity is part of general damages and is incapable of exact monetary computation. If the same kind of evidence were required as is necessary to prove loss of past wages as special damages, no award would ever be made for loss of future earning capacity. There was sufficient evidence of future disability and sufficient instruction on general damages to permit the jury to return an award for loss of future earning capacity as a part of general damages.

The jury was instructed by the court that each party was limited to the contentions or claims which were set forth in their respective pleadings. Defendant contends this was error because the instruction should have excepted therefrom defendant's claim that plaintiff was contributorily negligent. It is unnecessary to plead contributory negligence in this type of case. However, the assignment of error is without validity. In another part of the instruction the court

properly instructed the jury on contributory negligence and told it that it would not find any such contention in the pleading and that it was unnecessary to allege contributory negligence. Instructions are to be considered as a whole. Taken together the instructions were sufficiently clear and not confusing.

Defendant's last contention is that the damage award was excessive and that a remittitur should be granted. It claims that an appellate court has the power to reduce an unreasonable award in a Jones Act case. It bases its contention on *Wychgel v. States Steamship Co.*, 135 Or 475, 495-496, 296 P 863 (1931), in which this was done, and upon the proposition that federal appellate courts have this authority, and that in maritime cases this court is bound by federal law. On the other hand, plaintiff contends that *Wychgel* has been overruled by *Hust v. Moore-McCormick Lines, Inc.*, 180 Or 409, 430, 177 P2d 429 (1947), which plaintiff claims holds that only the trial court has this authority. Plaintiff also contends that this court is prevented by Art. VII, § 3 of the Oregon Constitution from reducing the judgment and that the matter is governed by Oregon, not federal law. In addition, he contends that the Seventh Amendment to the United States Constitution prevents it. If he is wrong in all the foregoing contentions, and federal law applies, he contends that federal appellate courts can only reduce a judgment if it is "monstrous," and this is not such a judgment.

Neither litigant has cited any opinion of the United States Supreme Court which is directly in point upon the question of an appellate court's authority to reduce a judgment. Presuming but not deciding federal law is applicable, the Circuit Court of Appeals for the Ninth Circuit in the case of *Steinbock v. Scheiwe,*

330 F2d 510, 512 (1964), held that the award could be reduced only if it was "monstrous." Also see *Solomon Dehydrating Company v. Guyton,* 294 F2d 439, 446-448, (CA 8 1961), cert den 368 US 929, 82 S Ct 366, 7 L ed2d 192, and *Hulett v. Brinson,* 229 F2d 22, 25, (CA DC 1955), cert den 350 US 1014, 76 S Ct 659, 100 L ed 874.

We believe it is unnecessary to decide all of the legal contentions of the parties because we have come to the conclusion that if federal law does govern, this judgment is not so "monstrous" as to be reducible by an appellate court. Plaintiff struck the bulkhead with such force that five teeth and a piece of bone in his lower jaw came out in one piece. In addition he lost three upper teeth. The remainder of his teeth were either fractured or loosened. He had plastic surgery performed upon scars on his face which resulted in some residual numbness and scarring. He suffered lacerations on the upper and lower lips, and contusions and abrasions of the left elbow and back. He had other injuries to his neck and back which the jury could find were permanent and which caused him the difficulties previously described in the discussion on another assignment of error. The judgment was certainly generous but we cannot say there was no basis for it. Therefore, presuming but not deciding that we do have the power defendant contends that we have, we decline to reduce the judgment in any event.

The judgment of the trial court is affirmed.