In the Matter of INDEPENDENT TRUCKERS, INC., Debtor.

No. B02021.

United States District Court
D. Nebraska.

Jan. 2, 1963.

Thomas R. Burke, Omaha, Neb., for Henry C. Dross, Mortgagee.

Bartlett Boyles, Lincoln, Neb., for First Federal Savings & Loan Ass'n, petitioner.

John W. Delehant, Lincoln, Neb., for Trailmobile, Inc.

Joseph R. Moore, Omaha, Neb., for Industrial Loan & Savings Co. and Mack Trucks.

Einar Viren, Omaha, Neb., Sp. Counsel to Harold Rock.

Russell Blumenthal, Asst. U. S. Atty., for United States.

W. C. Fraser, Omaha, Neb., for White Motors Co.

W. A. Sawtell, Jr., Omaha, Neb., for Stock Yards Nat. Bank.

Fremont Meyers, Omaha, Neb., for trustee in bankruptcy for Independent Truckers, Inc. and Neal Tire Store.

J. A. C. Kennedy, Jr., Omaha, Neb., for Yellow Mfg. Co.

Louis Seminara, Omaha, Neb., for Pacific Car & Foundry Co.

James Knowles, Omaha, Neb., for Gen. Elec. Credit Corp. and Baker Ind. Trucks, a division of Otis Elevator Co.

Harold Rock, Omaha, Neb., for trustee.

ROBINSON, Chief Judge.

The Debtor filed its Reorganization Petition in this Court, and a trustee was appointed on April 11, 1961. The Petition was filed under the provisions of Chapter X of the Bankruptcy Act.

The Debtor, at all times material hereto, was a truck line operating as a common carrier engaged in interstate commerce, maintaining its principal place of business in Omaha, Douglas County, Nebraska. Petitions by various creditors to reclaim property were filed and this decision relates itself to those creditors who were manufacturers and sellers of trucks, trailers and equipment customarily used by truck-line operators, the two principal petitioners in the reorganization proceedings being Trailmobile, Inc. and the White Motor Company.

The matter is now before the Court for decision on the various petitions to reclaim, and upon the motions of the Trustee to dismiss the petitions, and, the amendments to any of the petitions, and the answer of the trustee to the petitions to reclaim and upon the objections of the Trustee and other creditors and upon the evidence adduced at the various hearings held on said petitions and upon the briefs and oral arguments as submitted.

The following facts are clear from the evidence:

For several years prior to the filing of the Petition in Reorganization by the Debtor, the Debtor purchased from the various petitioning creditors, among them Trailmobile, Inc. and the White Motor Company, certain trucks and trailers and in connection with said purchases the Debtor executed and delivered to the petitioning creditors chattel mortgages, in some cases, and in others conditional sales contracts. Each of said chattel mortgages and conditional sales contracts was duly noted on the Nebraska Certificate of Title covering said trucks and trailers by the County Clerk of Douglas County, Nebraska. The chattel mortgages were each duly recorded in the office of the County Clerk of Douglas County, Nebraska. No promissory note or other instrument, except agreements to purchase, chattel mortgage and conditional sales contracts, was executed by the Debtor and the petitioning creditors in connection with the sale and purchase of these trucks and trailers.

No approval of the foregoing sales transactions was either sought or obtained from the Nebraska State Railway Commission or from the Interstate Commerce Commission.

The Debtor has been in default on payments on said mortgages and contracts since the initiation of these reorganization proceedings on April 11, 1961.

The issue before the Court is whether or not to grant reclamation. To determine that issue the Court must necessarily determine the validity of the con-

ditional sales contracts and the chattel mortgages as held by the petitioning creditors.

The principal objection to the validity of the contracts and mortgages was the failure to secure the approval of the Nebraska State Railway Commission of the contracts and mortgages in question. Section 75–704 of the Revised Statutes of Nebraska 1943, Reissue 1958, reads as follows:

"A common carrier or public service corporation doing business in the State of Nebraska, may issue stocks, bonds, notes or other evidence of indebtedness, payable at periods of more than twelve months after the date thereof, when necessary for the acquisition of property, the construction, completion, extension or improvement of facilities, or for the improvement or maintenance of its service, or for the discharge or lawful refunding of its obligations; *Provided,* and not otherwise, there shall have been secured from the State Railway Commission an order authorizing such issue and the amount thereof, and stating that in the opinion of the commission the use of the capital to be secured by the issue of such stock, bonds, notes or other evidence of indebtedness is reasonably required for the said purposes of the corporation."

The contracts and mortgages have maturities in excess of twelve months and it was stipulated by the interested parties that no Nebraska State Railway Commission approval was sought or obtained.

 It is also clear from the evidence that the transactions involved here were bona fide sales of equipment to the Debtor and were not in any sense loans or methods of generating capital. It seems clear that the Nebraska Statute as set out above applies only to the issuance of stocks, bonds, notes or other evidences of indebtedness for the purpose of raising capital funds. It appears to be incongruous to extend this

language to mortgages and conditional sales contracts of equipment executed in connection with the purchase of equipment. Such a conclusion is without foundation when the following language of the statute is taken into consideration—*"Provided,* and not otherwise, there shall have been secured from the State Railway Commission an order authorizing such issue \* \* \* and \* \* the use of the capital to be secured by the issue \* \* \* is reasonably required for the said purposes of the corporation."

The point at issue before this Court was likewise before the Supreme Court of Ohio in Red Star Transportation Co. v. Silverman, 44 Ohio App. 533, 186 N.E. 460 (1933). This case involved an Ohio statute from which the Nebraska statute was copied almost verbatim. The action involved was for the recovery of rent on a long-term lease. The defense was based on the theory that the lease had not been approved by the Ohio Commission. The lease was for a three-year term, and the Ohio statute required approval of "other evidences of indebtedness" in excess of twelve months. The Court held as follows:

"Section 614–53 General Code, has no application to ordinary indebtedness by a public utility, incurred in the proper management, control, or operation of its business, or to current operating expenses, such as lease rentals, labor, or contracts of employment. (Syllabus)

\* \* \* \* \* \*

"It certainly cannot be contended that the section is intended to apply to current operating expenses such as a lease \* \* \* or to articles of equipment bought under advantageous contract and to be delivered from time to time over a period longer than twelve months.

"This statute, in our judgment, was intended both for the protection of the utility, in the matter of proper capitalization, and for the protection of the investing public. The

terms 'stocks, bonds, notes and other evidences of indebtedness' seems to us to have been intended to contemplate proper capitalization of a company, and not operating expenses, and the term 'other evidences of indebtedness' might be trust certificates or any other form of capital indebtedness not properly described as stocks, bonds or notes."

■ The Court next considers the application of Section 75–709 of the Revised Statutes of Nebraska 1943, Reissue of 1958, which recognized that regulation of matters such as those before the Court is exclusively committed to the Interstate Commerce Commission under the applicable Federal Statutes. The section reads "The provisions of sections 75–704 to 75–713 shall not apply to common carriers, the security issues of which are under the control of the Interstate Commerce Commission."

What is urged upon the Court in opposition to this conclusion is that the exclusion outlined in the Statute applies only if Interstate Commerce Commission approval is deemed necessary in a particular case. The careful reading of the Statute, however, indicates that the statutory exemption applies to the carrier, not to the particular issue of the carrier.

The Supreme Court of the State of Nebraska in United Air Lines, Inc. v. Nebraska State Railway Commission, 172 Neb. 784, 112 N.W.2d 414, discussed the applicability of Section 75–704 of the Nebraska Statutes as well as 75–709 of the Nebraska Statutes to the interstate carrier, United Air Lines, Inc., where it proposed to issue, and in fact, did issue $25,000,000 of subordinated debenture bonds. In this case, United Air Lines petitioned for an Order of the State Railway Commission disclaiming jurisdiction, or, in the alternative, authorizing the issuance by United of its subordinated debenture bonds. The Railway Commission denied the Order of Disclaimer and granted the alternative prayer. The case is of interest to the Court because it sets out rather clearly the Supreme Court of Nebraska's opinion that the Nebraska State Railway Commission lacked jurisdiction over the issuance by United Air Lines of the debenture bonds. In support of its opinion, after citing the Nebraska Statutes above referred to, the Court cites Simpson v. Shepard, 230 U.S. 352, 33 S.Ct. 729, 57 L.Ed. 1511, 48 L.R.A.,N.S., 1151. Ann. Cas.1916A 18, to the effect, "[T]he grant in the Constitution of its own force, that is, without action by Congress, established the essential immunity of interstate commercial intercourse from the direct control of the States with respect to those subjects embraced within the grant which are of such a nature as to demand that, if regulated at all, their regulation should be prescribed by a single authority. It has repeatedly been declared by this court that as to those subjects which require a general system or uniformity of regulation the power of Congress is exclusive."

The Supreme Court of Nebraska concluded, "We hold that the matters involved in these applications are not subject to state control and hence that the orders of the commission here involved are invalid as being beyond the power of the commission to make. The commission's authority does not extend its reach that far."

The Court next notes Paragraph (7) of 49 U.S.C.A. § 20a which reads as follows:

"The jurisdiction conferred upon the commission * * * shall be exclusive and plenary, and a carrier may issue securities and assume obligations or liabilities in accordance with the provisions of this section without securing approval other than as specified herein."

A prior paragraph (Paragraph (2) of 49 U.S.C.A. § 20a) defines securities as "capital stock or any bond or other evidence of interest in or indebtedness of the carrier;" thus providing that other evidences of indebtedness may be issued "without securing approval other than as specified herein."

It is clear then that the purchase of property under a conditional sales contract or chattel mortgage by a common carrier is a single act requiring, at most, that one governmental authority pass upon the legality of the purchase, following the same theory as applicable to the issuance of stock and bonds. This approval power rests in the Federal Government when interstate commerce is involved. The Court has previously found that the debtor was engaged in interstate commerce. The fact that the Federal Government gave the Interstate Commerce Commission specific jurisdiction over only a portion of the "financing" done by carriers does not detract from the singleness of the transaction of purchasing property on a conditional sales contract or a chattel mortgage. Stated another way, the Federal Government has pre-empted the field of interstate carrier financing and the mere fact that it does not actively exercise its authority in all phases of such financing does not permit one or more states to step into the area of federal inactivity.

But reference has been made herein to Paragraph (7) of 49 U.S.C.A. § 20a which contains the language which indicates that no approval is necessary "other than as specified herein." The Court notes that Section 49 U.S.C.A. § 314 specifically provides that this regulatory requirement is not necessary in cases where the securities to be issued do not exceed one million dollars. The Court likewise notes that the mortgages and conditional sales contracts in question in this proceeding do not approach the million dollar mark and thus the Interstate Commerce Commission approval is not required.

The Court likewise notes in Lehigh Valley Railroad Company, 1 Fed.Car. Case, Paragraph 7360, June 21, 1939, that, "Although it may be conceded that a conditional sales contract is, in its broadest sense, an evidence of indebtedness, it will hardly be contended that such evidences of indebtedness are securities within the meaning of Section 20(a)." For a similar ruling on chattel mortgages see Hayes, 39 M.C.C. 576, 4 Fed.Car. Cases, Para. 30,723.

The Court concludes, therefore, that conditional sales contracts and chattel mortgages do not constitute "stocks, bonds, notes or other evidence of indebtedness" under Title 49 of the United States Code or under Chapter 75 of the Nebraska Statutes.

The Court pursuant to the reasons and findings herein set forth has heretofore entered judgments on behalf of each of those petitioning creditors for reclamation, granting and sustaining said petitions and ordering the Trustee to deliver the trailers and trucks to the respective petitioning creditors exempt from the restraints and injunctions contained in a prior order of the Court. dated April 11, 1961.