Argued May 7, reversed and remanded June 21, 1973

# W. J. SEUFERT LAND CO., *Appellant, v.* NATIONAL RESTAURANT SUPPLY COMPANY, *Respondent.*

511 P2d 363

*Roger L. Dick,* The Dalles, argued the cause for appellant. On the briefs were Dick & Dick, The Dalles.

*Carol A. Hewitt,* Portland, argued the cause for respondent. With her on the brief were Lindsay, Nahstoll, Hart, Duncan, Dafoe & Krause, Portland.

Before O'CONNELL, Chief Justice, and MCALLISTER, DENECKE, HOLMAN, TONGUE and BRYSON, Justices.

TONGUE, J.

This is an action for treble damages under the Oregon "Anti-price Discrimination Law," ORS ch 646. The case arises out of an agreement for the sale of restaurant equipment by defendant to plaintiff by reason of the fact that defendant paid the sum of $2,784.13, or 10 per cent of the purchase price received by it, to the lessee of the restaurant, to whom plaintiff had resold the equipment. Plaintiff appeals from a judgment in favor of defendant.

The trial court had previously entered an order overruling plaintiff's demurrer to an affirmative defense alleging that defendant was engaged in the Northwest in the sale of equipment much of which is manufactured in other states; that some of the equipment sold to plaintiff was ordered from sources in other states for delivery to plaintiff; that plaintiff's restaurant will serve interstate travelers; that "[d]efendant is engaged in interstate commerce, and the transaction which is the subject of Plaintiff's Complaint significantly affects interstate commerce."[1]

Plaintiff then filed a plea in abatement to defendant's affirmative defense, following which the issues raised by these pleadings were tried separately before the court, without a jury. The court then dismissed plaintiff's complaint, based upon findings that the allegations of the affirmative defense were true; that the sale was "in interstate commerce" and that ORS ch 646 applies only to "trade or commerce within" the state of Oregon.[2]

---

[1] Defendant also alleged counterclaims against plaintiff totaling $5,583.62.

[2] The trial court also denied defendant's counterclaims.

Plaintiff contends on this appeal that the trial court erred in overruling its demurrer to defendant's affirmative defense and in dismissing plaintiff's complaint.

Defendant cross-appeals, contending that plaintiff's complaint fails to state a cause of action either at common law or under ORS ch 646 and that ORS ch 646 has no application to "discounts" paid to "third parties," but applies only to those paid to the other party to a transaction or his agent.

It appears from the evidence offered on trial of plaintiff's plea in abatement to defendant's affirmative defense that plaintiff is the owner of a building at The Dalles and is an Oregon corporation. Defendant is a wholesaler in restaurant equipment and is a Washington corporation, but is authorized to do business in Oregon under the assumed business name, Brodie Hotel Supply of Oregon. Defendant operates its Oregon business from an office in Portland, where it has an Oregon resident as manager and also has a warehouse.

On January 6, 1967, plaintiff and defendant entered into an agreement for the purchase by plaintiff from defendant of various items of restaurant equipment, following negotiations in Oregon between plaintiff's president and a salesman of "Brodie Hotel Supply of Oregon," who was also an Oregon resident. Defendant's Oregon manager testified that the sale "originated in Oregon, out of [defendant's] Oregon office."

Pursuant to that transaction defendant then issued 30 purchase orders to various suppliers for the equipment to be installed in plaintiff's restaurant building. Nineteen of these purchase orders were di-

rected to suppliers in Oregon. Eleven were directed to suppliers in other states. According to defendant's salesman "[m]ost of the equipment is manufactured in other states and brought together to Portland or to wherever the job site is located, and installed" and that "[s]ome pieces are sent directly to the job site and some pieces are brought into the store and held until delivery can be coordinated and re-shipped to the job site."

Defendant also offered testimony that it was expected that the restaurant, located at the interstate bridge over the Columbia River at The Dalles, would have 50 per cent of its business from out-of-state customers.

At the trial on plaintiff's plea in abatement to defendant's affirmative defense no testimony was taken to prove or disprove the allegation of plaintiff's complaint that defendant had paid $2,784.13 of the proceeds of the sale to "Crazy Eric's of Oregon." There was testimony, however, that at the time of the purchase and sale of the restaurant equipment on January 6, 1967, it was contemplated that the building would be leased by plaintiff to "Crazy Eric's of Oregon" for operation as a restaurant and that the restaurant equipment would be resold to it; but that the corporation by that name had not yet been incorporated. Upon its subsequent incorporation it appeared that defendant's Oregon manager and his wife were among the stockholders of that corporation. The promoter and one of the principal stockholders of that corporation was Wayne C. Ericksen, who apparently was also a principal stockholder in a Washington corporation which operated some 19 restaurants in Washington. He also planned to open other "Crazy Eric's" restaurants in Oregon.

When defendant sold the equipment to plaintiff it knew, through its Oregon manager, that "Crazy Eric's" was to be the operator of the restaurant. Indeed, defendant's Oregon manager testified that it had been his belief that the restaurant equipment was being sold to "Crazy Eric's," as the purchaser of the equipment, rather than to plaintiff as the purchaser. Plaintiff was apparently considered by defendant's manager as financing the purchase of the equipment by "Crazy Eric's."

As the transaction was consummated, however, plaintiff purchased the equipment and paid its purchase price to defendant. The billing and bookkeeping on the transaction on behalf of defendant was handled by its main office in Seattle. Plaintiff then resold the equipment to "Crazy Eric's" under a conditional sales contract. "Crazy Eric's of Oregon" subsequently became bankrupt.

1. *The Robinson-Patman Act did not "pre-empt the field" so as to invalidate the Oregon "Anti-price Discrimination Law."*

Defendant contends that the federal Robinson-Patman Act, 15 USC § 13 (c), "pre-empts the area of interstate commerce to which plaintiff contends ORS 646.060 applies," with the result that it is "either unconstitutional or unenforceable," unless construed to have been intended to apply only to "purely intrastate transactions not covered by the Robinson-Patman Act." Defendant concedes that "the question has apparently not been litigated with respect to the federal versus the state regulation of the field of price discrimination," but contends that this result must follow

"by analogy" to other fields held to have been preempted by federal legislation.[3]

■ ■ It is, of course, well established that a state statute affecting interstate commerce is invalid when it conflicts with a federal statute enacted pursuant to the power of Congress to regulate interstate commerce.[4] In considering this question in a given case the courts start with the assumption that the police powers of the States were not superseded by the federal statute.[5] Even the fact that a state statute "coincides" with a federal statute, as in this case, does "not mean the automatic invalidity" of the state statute.[6] Indeed, such state statutes may be valid even

[3] Defendant cites Baltimore Ship. & Receiv. Ass'n v. Public Util. Com'n of Cal., 268 F Supp 836 (ND Cal 1967), aff'd, 389 US 583, 88 S Ct 694, 19 L ed 2d 783 (1968), involving motor transportation laws; In re Independent Truckers, Inc., 212 F Supp 402 (D Neb 1963), involving interstate carrier financing; Sargent & Co. v. Welco Feed Mfg. Co., 195 F2d 929 (8th Cir 1952), involving trademark laws; and Allen B. Dumont Laboratories v. Carroll, 184 F2d 153 (3d Cir 1950), cert denied, 340 US 929, 71 S Ct 490, 95 L ed 670 (1951), involving radio and television communication laws.

Defendant also cites Campbell v. Hussey, 368 US 297, 82 S Ct 327, 7 L ed 2d 299 (1961); Napier v. Atlantic Coast Line, 272 US 605, 47 S Ct 207, 71 L ed 432 (1926); Curran v. Mackay Radio & Telephone Co., 123 F Supp 83 (SDNY 1954); Bartlett & Co., Grain v. State Corp. Com'n of Kansas, 223 F Supp 975 (D Kan 1963), cert denied, 380 US 964, 85 S Ct 1109, 14 L ed 2d 154 (1965), and Mitchell v. Independent Ice & Cold Storage Company, 294 F2d 186 (5th Cir 1961), cert denied, 368 US 952, 82 S Ct 394, 7 L ed 2d 386 (1962).

[4] 2 Antieau, Modern Constitutional Law 40, § 10:22 (1969), stating that this result follows from the reading together of the commerce clause and the supremacy clause of the United States Constitution (Art VI, § 2).

[5] 2 Antieau, supra note 4, at 50, § 10:24, citing cases.

[6] 2 Antieau, supra note 4, at 53, § 10:26, quoting from California v. Zook, 336 US 725, 730, 69 S Ct 841, 93 L ed 1005 (1949), and also citing other cases.

though they impose higher standards· than those provided by a corresponding federal statute.[7]

■ The test to be applied in the determination of these questions, as stated by the Supreme Court of the United States in *Florida Avocado Growers v. Paul,* 373 US 132, 142, 83 S Ct 1210, 10 L ed 2d 248 (1963), is as follows:

> "* * * The test of whether both federal and state regulations may operate, or the state regulation must give way, is whether both regulations can be enforced without impairing the federal superintendence of the field, not whether they are aimed at similar or different objectives.
>
> "The principle to be derived from our decisions is that federal regulation of a field of commerce should not be deemed preemptive of state regulatory power in the absence of persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained. * * *"

In *Smith Kline & French v. Tax Com.,* 241 Or 50, 59, 403 P2d 375 (1965), after citing *Florida Avocado Growers v. Paul, supra,* we held to the same effect. Cf. *State v. Jacobson,* 80 Or 648, 157 P 1108 (1916).

■ Upon application of this two-fold test we conclude first that the nature of the subject matter regulated by ORS ch 646 is not such as to "permit no other conclusion" than of "pre-emption" of that entire subject matter by the federal Robinson-Patman Act. There is no "* * * inevitable collision between the two schemes of regulation despite [some] dissimilarity of the standards" of these two statutes.[8] The state of

---

[7] Florida Avocado Growers v. Paul, 373 US 132, 144, 83 S Ct 1210, 10 L ed 2d 248 (1963); Cloverleaf Co. v. Patterson, 315 US 148, 162, 62 S Ct 491, 86 L ed 754 (1942).

[8] Cf. Florida Avocado Growers v. Paul, *supra* 373 U.S. note 7, at 143.

Oregon has a "legitimate interest" in the protection of its citizens against discriminatory schemes and devices in the sale of goods in Oregon.[9] As previously noted, the fact that the standards imposed by ORS 646.060 may be "dissimilar" or "higher" than those of the Robinson-Patman Act is not of itself a sufficient reason to hold that there has been a federal preemption of this subject matter.[10]

Thus, as in *Florida Avocado Growers v. Paul, supra,* upon finding "no irreconcilable conflict" between these state and federal statutes we turn to the second segment of the test as established in that case as to which that court went on to state (at 146) that:

> "* * * The settled mandate governing this inquiry, in deference to the fact that a state regulation of this kind is an exercise of the 'historic police powers of the States,' is not to decree such a federal displacement 'unless that was the clear and manifest purpose of Congress,' * * *."

As in that case, we "search in vain for such a mandate" by Congress in the adoption of the Robinson-Patman Act. It is also significant to note, as stated in Rowe, Price Discrimination Under the Robinson-Patman Act 78, § 4.9 (1962):

> "The commerce coverage of the Robinson-Patman Act falls short of the broad sweep of the Sherman Act. Courts apply Sherman Act proscriptions to restrictive or monopolistic business activities wherever they occur, so long as interstate commerce is 'affected.' On the other hand, the price discrimination clauses of Robinson-Patman require

---

[9] Cf. Florida Avocado Growers v. Paul, *supra* 373 U.S. note 7, at 144. See also 2 Antieau, *supra* note 4, at 88, 89, § 10:42. See also Arden Farms v. Dept. of Agriculture, 245 Or 214, 216-17, 420 P2d 379 (1966), *appeal dismissed,* 386 US 350, 87 S Ct 1161, 18 L ed 2d 99 (1967).

[10] Cf. Florida Avocado Growers v. Paul, *supra* 373 U.S. note 7, at 144.

that the discriminator be 'engaged in commerce,' that the challenged discrimination occur 'in the course of such commerce,' and that 'either or any of the purchases involved in such discrimination are in commerce . . .' Any broader interstate commerce reach of Robinson-Patman is refuted by its legislative history, for the Senate-House Conference struck a clause in the House bill which would have adopted the 'effect on commerce' criterion. * * *"

In the years since that statute was adopted both Congress and the federal courts have had ample opportunity to declare such an intention.[⑪] It is possible, of course, that the United States Supreme Court may do so.[⑫] In our judgment, however, the fact that some courts have held that other federal statutes have pre-empted other subjects of possible state legislation is not sufficient, "by analogy," to require application of the doctrine of "pre-emption" in this case, as urged by defendant.

The question remains, however, whether the application of ORS ch 646 to the transaction involved in this case would improperly interfere with or impose a burden upon interstate commerce so as to invalidate its application to this transaction.

2. *The transaction in this case was subject to ORS ch 646 and its application to that transaction does not improperly interfere with or burden interstate commerce.*

Defendant contends that ORS ch 646 applies "only to intrastate commerce" and that the transaction

---

[⑪] See, for example, Safeway Stores v Oklahoma Growers, 360 US 334, 79 S Ct 1196, 3 L ed 2d 1280 (1959).

[⑫] See Rowe, Price Discrimination Under the Robinson-Patman Act 44, § 3.6 (1962).

involved in this case was "in interstate commerce," both in the sense that it was in the "stream of commerce" and that it was one which had a "substantial effect on commerce."

The basis of decision by the trial court, as stated in a memorandum opinion, was that:

"* * * The sale of the personal property from the Defendant to the Plaintiff was in interstate commerce.

"Chapter 646 of ORS applies only to 'trade or commerce within' the State of Oregon. Plaintiff's complaint is based on Chapter 646 of ORS and therefore will be dismissed."

The requirements of ORS 646.060, by its terms, apply to "person[s] engaged in commerce." ORS 646.020 (1) (a) defines "commerce" to mean "* * * trade or commerce within this state, exclusive of food commerce."

■ We believe, however, that in the enactment of this statute the legislature intended that it should be "liberally construed to afford the greatest possible protection to the public." Cf. *Adamson v. Lang,* 236 Or 511, 516, 389 P2d 39 (1964), adopting the same position with reference to ORS ch 59 (Oregon Blue Sky Law).

■ To accomplish that purpose, we believe that the legislature intended that it be given the broadest possible application consistent with limitations imposed upon the states as a result of the power conferred upon Congress by the United States Constitution to regulate interstate commerce. Accordingly, we believe that the legislature intended by the adoption of ORS ch 646 to protect Oregon purchasers and sellers of goods

from discriminatory "schemes and devices" in all transactions within the terms of the statute as to which the state of Oregon can validly exercise its power.

■ For these reasons, we believe that it was the intent of the legislature to include within the protection of ORS ch 646 the purchasers of goods in transactions, such as this, which "originated" in Oregon, for delivery in Oregon, and which were negotiated in Oregon between individual persons residing in Oregon and that such transactions should be considered to be "trade or commerce within this state" for the purposes of ORS ch 646. We reach this result despite the fact that the individuals who sold such goods and who were engaged in business in Oregon, where they resided, represented sellers residing in other states and even though some or all of the goods which were the subject of such sales were originally manufactured in other states or were subsequently shipped into Oregon from other states.

We therefore hold that the transaction involved in this case is within the intended meaning and application of ORS ch 646 provided that this statute is valid as applied to this transaction.

As stated in 2 Antieau, Modern Constitutional Law 60-61, § 10:29 (1969), quoting from a decision by Chief Justice Stone in *Southern Pacific Co. v. Arizona,* 325 US 761, 770, 65 S Ct 1515, 89 L ed 1915 (1945):

"'[t]here has thus been left to the states wide scope for the regulation of matters of local state concerns, even though in some measure it affects the commerce, provided it does not materially restrict the free flow of commerce across state lines, or interfere with it in matters with respect

to which uniformity of regulation is of predominant national concern.' "

■ We have already concluded that ORS ch 646 does not undertake to regulate a "matter with respect to which uniformity of regulation is of predominant national concern." The remaining question is whether ORS ch 646, as applied to the transaction involved in this case, would "materially restrict the free flow of commerce across state lines," to the extent that it is invalid as applied to this transaction.

■ In considering this question we find no decisions by the United States Supreme Court involving state statutes which undertake to prohibit discrimination in the sale of goods, as under ORS ch 646. We do, however, find numerous cases in which it has been held that a state may impose sales taxes or otherwise tax or regulate transactions involving the sale of goods within a state, which are essentially local in their inception and execution, even though, as in this case, some or all of the goods themselves are subsequently shipped to the purchaser from points outside the state. These cases, which hold that no unconstitutional burden on interstate commerce is imposed by the application of such a state statute to such a transaction (or as stated by some of them, that in such a transaction the interstate shipment of such goods is merely "incidental" to the intrastate sale) include the following: *Banker Brothers v. Pennsylvania,* 222 US 210, 213, 32 S Ct 38, 56 L ed 168 (1911); *Hall v. Geiger-Jones Co.,* 242 US 539, 557-58, 37 S Ct 217, 61 L ed 480 (1917); *Wiloil Corp. v. Pennsylvania,* 294 US 169, 174-75, 55 S Ct 358, 79 L ed 838 (1935); *Harvester Co. v. Dept. of Treasury,* 322 US 340, 346, 64 S Ct 1019, 88 L ed 1313 (1944); *Graybar Electric Co. v. Curry,* 238

Ala 116, 189 So 186, 190 (1939), *aff'd per curiam,* 308 US 513, 60 S Ct 139, 84 L ed 437 (1939) ; *Commissioner of Corporations and T. v. Ford Motor Co.,* 308 Mass 558, 33 NE2d 318, 324 (1941) ; *Sears, Roebuck & Co. v. McGoldrick,* 279 NY 184, 18 NE2d 25, 27 (1938) ; and *Meyer v. State Board of Equalization,* 42 Cal 2d 376, 267 P2d 257, 261 (1954). See also *Dunbar-Stanley Studios v. Alabama,* 393 US 537, 540-41, 89 S Ct 757, 21 L ed 2d 759 (1969). The mere fact that such a contract is entered into in Oregon between citizens of different states does not require a contrary result. See *Graybar Electric Co. v. Curry, supra,* and *Commissioner of Corporations and T. v. Ford Motor Co., supra.* See also *Utah Tax Comm'n v. Pacific Pipe Co.,* 372 US 605, 83 S Ct 925, 10 L ed 2d 8 (1963).

The previous decisions of this court, while not directly in point, are not to the contrary. See *Loveland et al v. Warner et al,* 103 Or 638, 661, 204 P 622, 206 P 298 (1922). Cf. *Lambert Pharmacal Co. v. Roberts Bros.,* 192 Or 23, 37-38, 233 P2d 258 (1951).[9]

Accordingly, we hold that under the facts and circumstances of this case, the sale of the restaurant equipment by defendant to plaintiff was a "local transaction" which constituted "commerce within the state," within the meaning of ORS ch 646; that the fact that

---

[9] Defendant cites Atlanta Motel v. United States, 379 US 241, 85 S Ct 348, 13 L ed 2d 258 (1964); Katzenbach v. McClung, 379 US 294, 85 S Ct 377, 13 L ed 2d 290 (1964); Quality Bakers of America v. Federal Trade Commission, 114 F2d 393 (1st Cir 1940), and Kosuga v. Kelly, 257 F2d 48 (7th Cir 1958), *aff'd,* 358 US 516, 79 S Ct 429, 3 L ed 2d 475 (1959). The first three of these cases, although adopting a broad definition of the commerce power in the application of federal statutes, did not involve the validity or application of a state statute, as in this case. The *Kosuga* case involved the purchase of 287 carloads of onions in a transaction clearly in interstate commerce and under facts wholly different than those involved in this case.

defendant is a Washington corporation with its main offices and main warehouse in Seattle, and that the billing and bookkeeping on the transaction was handled out of Seattle does not change the essential nature of the transaction, and that the fact that, pursuant to this transaction, some of the restaurant equipment was to be shipped in from other states does not require us to hold that the application of ORS ch 646 to this transaction would impose such a burden on interstate commerce as to invalidate the application of the statute to this transaction. We also hold that the fact that interstate travelers may be served in the restaurant does not require a different result under the facts of this case.

It follows that the trial court erred in holding that this transaction was "in interstate commerce" and in dismissing plaintiff's complaint unless defendant is correct in contending in its cross-appeal that the trial court erred in overruling defendant's demurrer to plaintiff's complaint upon the ground that it failed to state a cause of action.

3. *The trial court erred in dismissing plaintiff's complaint.*

Defendant contends that plaintiff's complaint fails to state a cause of action under ORS ch 646. More specifically, defendant contends that ORS 646.060 was not intended to apply to payments made to "third parties"; that the complaint alleges no facts which show that defendant was not entitled to pay such a discount to a third party or that plaintiff was entitled to the alleged "discount," and that ORS 646.060 applies only to transactions in which such payments fall within the terms of ORS 646.060 relating to payments "* * *

or any allowance or discount in lieu thereof \* \* \* to any agent, representative or other intermediary, \* \* \*" in the transaction "\* \* \* where such agent, representative or other intermediary is acting for or in behalf of or is subject to the direct or indirect control of the other party to the transaction."⑩

Plaintiff contends, on the contrary, that despite such terms in the second sentence of ORS 646.060, the first sentence of that section contains no such limitation.

As originally enacted, the section was composed of one, rather than two sentences.⑪

It must be conceded that the intent of the legislature in adding what is now the second sentence of

---

⑩ ORS 646.060 provides as follows:

"*No person* engaged in commerce or food commerce, or both, in the course of such commerce, *shall pay,* grant, receive or accept anything of value as a commission, brokerage or other compensation, or *any allowance or discount* in lieu thereof, *except for services rendered in connection with the sale or purchase of goods,* wares, service, or output of a service trade, or merchandise. In all such transactions of sale and purchase, neither party to the transaction shall pay or grant anything of value as a commission, brokerage or other compensation, or any allowance or discount in lieu thereof, to the other party to the transaction or to any agent, representative or other intermediary therein, where such agent, representative or other intermediary is acting for or in behalf of or is subject to the direct or indirect control of the other party to the transaction." (Emphasis added)

⑪ Oregon Laws 1937, ch 215, § 2 (c), p 301, provided that:

"It shall be unlawful for any person engaged in commerce and/or food commerce, in the course of such commerce, to pay or grant, or to receive or accept, anything of value as a commission, brokerage or other compensation, or any allowance or discount in lieu thereof, except for services rendered in connection with the sale or purchase of goods, wares, service, or output of a service trade, or merchandise; *provided,*

(Continued on page 109)

that section is not entirely clear and little legislative history is available on this question.[16]

It appears from the letter to counsel in which the trial judge informed them of his decision to overrule defendant's demurrer that he entertained doubts

---

(Continued from page 108)

*however, that* in all such transactions of sale and purchase it shall be unlawful for either party to such transaction to pay or grant anything of value as a commission, brokerage or other compensation, or any allowance or discount in lieu thereof, to the other party to the transaction or to any agent, representative or other intermediary therein, where such agent, representative or other intermediary is acting for or in behalf of or is subject to the direct or indirect control of the said other party to such transaction." (Emphasis added)

[16] The Robinson-Patman Act, 15 USC § 13, was enacted on June 19, 1936. What is now ORS ch 646 was signed by the Governor of Oregon on March 6, 1937.

Section 2 (c) of the Robinson-Patman Act (15 USC § 13 (c)) clearly provides, in one complete sentence, with no "provisos," that its terms are limited to "discounts" or other similar payments when made to "* * * the other party to such transaction or to an agent, representative, or other intermediary therein where * * * acting in fact for or in behalf, or is subject to the direct or indirect control, of any party to such transaction * * *."

The Oregon legislature, in the enactment of ORS 646.060, chose not to follow these identical terms and although the terms of that section are similar, and in some respects identical, the terms relating to "agent[s], representative[s] or other intermediar[ies]" are set forth as a "proviso," following the primary terms of that section. This indicates, if anything, that the intent of the Oregon legislature as to the scope and application of ORS 646.060 was not precisely the same as that of Congress in enacting § 2 (c).

Three other states have also adopted similar statutes, but none of them, including court decisions interpreting them, are helpful on the question to be decided in this case. See Idaho Code, § 48-202 (c); NM Stat § 49-1-1-5, and Utah Code § 13-5-3 (c). Indeed, the Utah Code provision is almost identical to the first sentence of ORS 646.060, but does not include anything that resembles the second sentence. This indicates, if anything, that a legislature can intend provisions such as those set forth in the first sentence of ORS 646.060 to operate independently of any limitation to pay-

(Continued on page 110)

whether plaintiff's complaint was sufficient, saying, however, that "I believe that the fairest way to handle this question is to overrule the demurrer and let the case proceed to trial. * * *"

As matters developed, we believe that this was a wise decision. Evidence was received on the trial of plaintiff's plea in abatement, without objection, to the effect that defendant's Oregon manager was at least originally under the belief that this was a sale of restaurant equipment by defendant to "Crazy Eric's of Oregon"; that its principal stockholder also operated a chain of restaurants in Washington and planned to develop a similar chain in Oregon; that when "Crazy Eric's of Oregon" was incorporated defendant's Oregon manager and his wife were among its stockholders.

That evidence was not controlling upon the issues raised by plaintiff's plea in abatement to defendant's affirmative defense. We believe, however, if that upon trial on the merits of this case, plaintiff again offered this same evidence as developed on trial of the plea in abatement, and also offered evidence that defendant paid to "Crazy Eric's" 10 per cent of the purchase price received by it from plaintiff, the trier of the fact could reasonably infer from such evidence that defendant did not sell the equipment to plaintiff at the same price that it would have sold it to "Crazy Eric's"; that in the event that this restaurant equipment had been sold directly by defendant to "Crazy Eric's of Oregon,"

---

(Continued from page 109)

ments made to the other party or its agents, representatives or intermediaries.

Defendant has cited Burt v. Woolsulate, Inc., 106 Utah 156, 146 P2d 203 (1944), arising under the Utah statute, but we do not find it either helpful or persuasive on this question.

rather than to plaintiff, a "discount" of 10 per cent would have been allowed by defendant to "Crazy Eric's," and that, as a result, there was a "discrimination" in the price charged by defendant to plaintiff.

The purpose of ORS ch 646, as stated in ORS 646.010, is to protect the public from:

"* * * any scheme of special concessions or rebates, any collateral contracts or agreements or any device of any nature whereby discrimination is, in substance or fact, effected in violation of the spirit and intent of ORS 646.010 to 646.180."

As previously stated, we believe that in the enactment of this statute the legislature intended that it should be "liberally construed to afford the greatest possible protection to the public."

After considering ORS 646.060 in its application to the facts of this case, and in the light of the purpose of this statute, as stated in ORS 646.010, we hold that the provisions of the first part of ORS 646.060 prohibit payments, allowances and discounts of the nature involved in this case regardless of whether the person who was allegedly paid such a "discount" was an "agent, representative or other intermediary."

In other words, we hold that the first part of ORS 646.060, as applied to a "scheme" or "device * * * whereby discrimination is * * * effected," within the meaning of ORS 646.010, is not modified by the second part of that section so as to limit its application to persons who are "agent[s], representative[s] or other intermediar[ies] * * * acting for or in behalf of or * * * subject to the direct or indirect control of the other party to the transaction."

Plaintiff's complaint alleges that defendant

paid 10 per cent of the purchase price to "Crazy Eric's of Oregon," but alleges no facts which show that such a payment was pursuant to any discriminatory "scheme" or "device." We therefore hold that the allegations of plaintiff's second amended complaint were not sufficient to allege a cause of action under ORS 646.060. It appears from the foregoing evidence, however, that it may have been possible for plaintiff to allege sufficient facts to constitute such a cause of action. Accordingly, plaintiff is entitled to an opportunity to do so and it was error to dismiss plaintiff's complaint.

Because of the basis on which we decide this case it is not necessary to consider plaintiff's further contention that its complaint stated sufficient facts to constitute a cause of action at common law and defendant's contention to the contrary.

For all of these reasons this case is remanded to the trial court for further proceedings not inconsistent with this opinion.

Reversed and remanded.