Argued and submitted July 13, 1984, affirmed May 1, reconsideration denied July 26, petition for review denied August 20, 1985 (299 Or 663)

## FORSTER et al,
*Respondents,*

*v.*

## KAWASAKI MOTORS CORP.,
*Appellant.*

(A8009-05038; CA A27961)

698 P2d 1001

James H. Clarke, Portland, argued the cause for appellant. With him on the briefs was Spears, Lubersky, Campbell, Bledsoe, Anderson & Young, Portland.

Roger G. Tilbury, Portland, argued the cause for respondents. With him on the brief were Mark Pengilly, and Carol J. Buehrens, Portland.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

WARDEN, J.

## WARDEN, J.

Plaintiff[1] brought this action for damages for violation of Oregon's Antiprice Discrimination Law. ORS 646.010 to 646.180. The jury returned a verdict awarding plaintiff $200,000, and judgment was entered trebling that amount pursuant to ORS 646.140(1) and ORS 646.150.[2] Defendant appeals, raising six assignments of error concerning the trial court's denial of defendant's motion for a directed verdict and motions to strike certain allegations of plaintiff's complaint, its giving of two specified jury instructions and its refusal to give another. We affirm.

The following facts set the background for this action. Sometime before 1969, Joe Dobbins established a Kawasaki distributorship in the Portland area. In 1969, in conjunction with that distributorship, he opened a retail dealership called Kawasaki City. He operated the outlet as a distributorship and as a retail dealership until defendant terminated the distributorship arrangement in 1972. As a distributor, Dobbins had maintained a large parts inventory; when the distributorship was terminated, he kept the inventory. In 1973, Dobbins negotiated with RFH&S, Inc., for the sale of Kawasaki City. At that time, RFH&S signed a dealership agreement with defendant. RFH&S also asked defendant to appraise the parts inventory; according to one of defendant's then vice-presidents, defendant declined to do an

---

[1] Plaintiffs Forster commenced doing business under the partnership name Competition Motors in 1966. In 1976, they incorporated the business as Competition Motors, Ltd. We will refer to both the partnership and the corporation as plaintiff.

[2] ORS 646.140(1) provides:

"Any person injured by any violation, or who will suffer injury from any threatened violation, of ORS 646.010 to 646.180 may maintain an action in any court of general equitable jurisdiction of this state, to prevent, restrain or enjoin the violation or threatened violation. If in such action, a violation or threatened violation of ORS 646.010 to 646.180 is established, the court shall enjoin and restrain or otherwise prohibit such violation or threatened violation, and the plaintiff in the action is entitled to recover three-fold the damages sustained by the plaintiff, and the costs of suit and a reasonable attorney fee at trial and on appeal."

ORS 646.150 provides:

"If no injunctive relief is sought or required, any person injured by any violation of ORS 646.010 to 646.180 may maintain an action for damages alone in any court of general jurisdiction in this state. The measure of damages in such action shall be the same as that prescribed by ORS 646.140."

appraisal, because it did not want to interfere with the sale of Kawasaki City. RFH&S subsequently purchased the Kawasaki City name and Dobbins' entire parts inventory.

Plaintiff became a Kawasaki dealer under an agreement with defendant in 1973. It opened in a location about six miles from Kawasaki City. Although it sold some other lines of motorcycles and accessories, Kawasaki products comprised most of its sales volume, which increased from about $352,000 in 1974 to about $872,000 in 1979. In the fall of 1979, defendant terminated plaintiff's dealership when it failed to pay a parts bill of about $50,000. Plaintiff ceased selling Kawasaki products, and its business volume declined considerably. In 1980, its gross sales were approximately $316,000; it went out of business in 1982.

Plaintiff commenced this action in 1980, pursuant to the Oregon Antiprice Discrimination Law, which in relevant part states:

"It is unlawful for any person engaged in commmerce or food commerce, or both, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities, or services or output of a service trade, of like grade and quality or to discriminate in price between different sections, communities or cities or portions thereof or between different locations in sections, communities, cities or portions thereof in this state, where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them." ORS 646.040(1).

There are few Oregon decisions construing ORS 646.040 or other provisions of the Antiprice Discrimination Law. However, because it was modeled after the Robinson-Patman Act, 15 USC § 13, federal cases are persuasive in interpreting the Oregon statute. *Redmond Ready-Mix, Inc. v. Coats,* 283 Or 101, 110, 582 P2d 1340 (1978).

The basis of plaintiff's complaint is that defendant discriminated against it in the price of Kawasaki products, thereby destroying its ability to compete with favored dealers and causing it to discontinue the sale of Kawasaki products,

substantially lessening competition in the area and resulting in monetary damage to plaintiff's business. Specifically, plaintiff alleged price discrimination in providing credit to plaintiff's competitors and in purchasing their outdated inventory:

"VII

"During the period in which KAWASAKI sold motorcycles, parts and accessories to Plaintiffs, KAWASAKI sold products of like grade and quality to other dealers of KAWASAKI products within the Portland metropolitan area. In the course of its dealings Defendant offered, provided and/or arranged credit to these other dealers at rates lower than those offered to Plaintiffs. * * *

"VIII

"During the period in which KAWASAKI sold motorcycles, parts and accessories to Plaintiffs, KAWASAKI repurchased outdated inventory from dealers competing with Plaintiffs for substantial sums of money. KAWASAKI refused to purchase inventory of like grade and quality from Plaintiffs."

We first consider defendant's motion for a directed verdict and its motions to strike, which were made on the ground of insufficiency of the evidence. In resolving those questions on appeal after a jury verdict for plaintiff, we view the record in the light most favorable to plaintiff, which is entitled to the benefit of every reasonable inference that may be drawn from the evidence. *See Scott v. Mercer Steel/ Edwards Realty,* 263 Or 464, 466-67, 503 P2d 1242 (1972); *Terry v. Holden-Dhein Enterprises, Ltd.,* 48 Or App 763, 765-66, 618 P2d 7, *rev den* 290 Or 271 (1980). We examine the record to determine whether there was sufficient evidence from which, if believed, the jury could reach a verdict in favor of plaintiff. *James v. Carnation Co.,* 278 Or 65, 69, 562 P2d 1192 (1977).

Defendant's motion for a directed verdict and its first motion to strike related to plaintiff's claim that defendant committed price discrimination by purchasing outdated inventory from a competitor, Kawasaki City. The assignments of error based on those motions raise the same issue, whether the purchase of parts under the evidence in this case could constitute price discrimination under the Antiprice Discrimination Law, and we consider them together.

There was uncontroverted evidence that defendant purchased parts from Kawasaki City on several occasions in 1975 and 1976. The 1975 purchases included one of approximately $5,000 and one of approximately $7,000; the 1976 purchases totalled $18,000 to $20,000. The parts purchased were primarily those that RFH&S had acquired in its purchase of Kawasaki City from Dobbins in 1973. It had purchased the parts believing an extensive inventory to be an advantage but discovered by early 1974 that it was not, because the parts were obsolete for its needs but were costing interest on their purchase price.

Defendant argues that the parts purchases cannot be the basis for a violation of ORS 646.040, because there is evidence that they were collateral transactions and, therefore, as a matter of law, were unrelated to the sale of Kawasaki products or the price that Kawasaki City paid for the products. There is evidence that principals of RFH&S believed that defendant was obligated to repurchase the obsolete parts, because defendant had failed to appraise the parts inventory for RFH&S before it bought Kawasaki City from Dobbins, and that the lack of that appraisal had caused RFH&S to pay more than it otherwise would have. There is also evidence that the 1975 purchases were made in response to a threat of litigation over defendant's potential liability to RFH&S and that the 1976 purchases were made after RFH&S and defendant had executed a written agreement in which RFH&S agreed not to institute any action against defendant for any damages stemming from the parties' previous business transactions and defendant agreed to purchase a minimum of $10,000 of "obsolete parts" acquired by RFH&S from Dobbins and also to extend a $50,000 line of interest free credit to Kawasaki City through September, 1977. All of the parts were of some value to defendant, and the prices paid were somewhat less than dealer cost.[3]

Defendant argues that, because there was neither a common seller nor a second "favored" purchaser, the statutory requirement of a discrimination in price to different

---

[3] For the 1975 purchases, defendant paid Kawasaki City dealer cost minus 20 percent and also prepaid the freight charges; for parts purchased under the 1976 agreement, defendant paid prices equal to its own base cost of importing them from Japan.

purchasers was not satisfied and that the issue, therefore, should not have been submitted to the jury.[4] We are not persuaded.

Price discrimination within the meaning of the Anti-price Discrimination Law is a price difference. *See Redmond Ready-Mix, Inc. v. Coats, supra,* 283 Or at 112; *see also FTC v. Anheuser-Busch,* 363 US 536, 549, 80 S Ct 1267, 4 L Ed 2d 1385 (1960). Price discrimination may be direct, as when a seller charges different prices to different purchasers, *Redmond Ready-Mix, Inc. v. Coats, supra,* but it may also result from offering of special concessions, as is apparent from the statutory definition of "price:"

"When used in ORS 646.010 to 646.180, unless the context otherwise requires:

" 'Price' means the net price to the buyer after the deduction of all discounts, rebates, or other price concessions paid or allowed by the seller." ORS 646.020(1)(d).

*See also Robbins Flooring, Inc. v. Federal Floors, Inc.,* 445 F Supp 4, 8 (ED Pa 1977). That the legislature intended a broad application of the statute is further reflected in the expansive language of ORS 646.010:

"ORS 646.010 to 646.180 shall be known and designated as the Antiprice Discrimination Law; and the inhibitions against discrimination in those sections shall embrace any scheme of special concessions or rebates, any collateral contracts or agreements or any device of any nature whereby discrimination is, in substance or fact, effected in violation of the spirit and intent of ORS 646.010 to 646.180."

*See also W. J. Seufert v. Nat'l Rest. Sup. Co.,* 266 Or 92, 103, 511 P2d 363 (1973) (Antiprice Discrimination Law should be

---

[4] Defendant limits its argument to whether a "price discrimination" within the statute could be deemed to have occurred; it does not contend that the jury was required to find "justification" of price discrimination under ORS 646.050:

"Upon proof being made, in any suit or other proceeding in which any violation of ORS 646.010 to 646.180 is at issue, that there has been discrmination in price, or in services or facilities rendered or to be rendered, the burden of rebutting the prima facie case thus made by showing justification is upon the person charged with the violation; but this section does not prevent a seller rebutting the prima facie case so made by showing that his lower price, or the payment for or furnishing of services or facilities to any purchaser or purchasers was made in good faith to meet an equally low price of a competitor or the services or facilities furnished by a competitor."

liberally construed to afford greatest possible protection to public).

■ The evidence in this case does not compel the conclusion that the parts purchases were transactions outside the statutory prohibitions. There was evidence that the involved parts were obsolete as to Kawasaki City's needs and were of no value to it in its business. Kawasaki City's exchange of those parts for cash or credit to its account with defendant resulted in a concession to Kawasaki City functionally equivalent to a cash discount. That the parts may have had some value to defendant is of no consequence under these circumstances. The evidence supports the conclusion that defendant purchased the parts to assist Kawasaki City in updating its inventory of defendant's products; it follows that a jury could find that the purchases were intrinsically related to defendant's sale of current products to Kawasaki City and would affect their price. Accordingly, those purchases can form the basis for a violation of ORS 646.040. *Cf. Sachs v. Brown Forman Distillers Corporation,* 134 F Supp 9 (SD NY 1955), *aff'd* 234 F2d 959 (2nd Cir 1956), *cert den* 352 US 925, (1956) (no violation of Robinson-Patman Act from independent sales of scarce goods by wholesaler to distiller and by distiller to wholesaler when each wanted the other's product).

■ We also reject defendant's argument that, because plaintiff did not affirmatively prove that it had obsolete parts available for sale in 1975 and 1976, there was no "contemporaneous" transaction which could result in price discrimination. The evidence of defendant's parts purchases from Kawasaki City, together with evidence of defendant's contemporaneous sales of its products to both Kawasaki City and plaintiff, was sufficient to prove a difference in price between two purchasers. To avoid liability for price discrimination under these facts, defendant would have had to take affirmative action to inform plaintiff of the opportunity to dispose of obsolete parts. *See Century Hardware Corp. v. Acme United Corp.,* 467 F Supp 350 (ED Wisc 1979) (supplier engaged in price discrimination under Robinson-Patman Act by failing to take affirmative action to inform company of availability of discount). The evidence, however, established that the privilege was uniquely made available to Kawasaki City. We hold that the 1975 and 1976 parts purchases are within the scope of the special concessions or collateral agreements prohibited by

the Oregon Antiprice Discrimination Law.

■      Evidence that defendant purchased the entire inventory of parts upon Kawasaki City's termination of its dealership in 1978 on terms more favorable than its standard dealership agreement also was admitted. Defendant objected to the admission of that evidence and asserted its allegedly erroneous admission as a basis for its assignments of error relating to denial of its motions to strike paragraph VIII of plaintiff's complaint and for a directed verdict. Plaintiff's complaint, however, alleged price discrimination among *competing* dealers; because that evidence did not relate to a competing dealer, the evidence had no bearing on the allegation and its admission does not support defendant's argument that the trial court erred in denying defendant's motion to strike the allegation.[5]

■      In support of its motion for a directed verdict, defendant argued that the 1978 parts purchase could not be the basis for plaintiff's case, because Kawasaki City at that point was not a competitor. The trial court correctly instructed the jury that, to be actionable, any alleged price discrimination must have an adverse effect on competition. Under that instruction, the jury could not have relied on that evidence in reaching its verdict for plaintiff.

Defendant also assigns as error the trial court's denial of its motion to strike paragraph VII of plaintiff's complaint alleging price discrimination based on "free flooring" furnished by defendant to Kawasaki City from 1975 to 1977. Evidence that defendant furnished a $50,000 line of interest-free credit to Kawasaki City during that time period is not disputed. Defendant, however, argues that credit is not a subject of the Antiprice Discrimination Law and thus cannot be the basis for a violation of ORS 646.040. Alternatively, defendant argues that any free flooring was not a price concession but was a collateral transaction for the business purpose of settling its dispute with Kawasaki City and, therefore, as a matter of law did not constitute price discrimination.

■      Reduced to its essentials, the issue is whether a difference in credit terms can amount to a difference in price.

---

[5] Defendant does not assign error to the admission of the evidence.

That is a question that has not been addressed previously by Oregon appellate courts. In *Catalano, Inc. v. Target Sales, Inc.,* 446 US 643, 100 S Ct 1925, 64 L Ed 2d 580 (1980), retailers of beer brought an action against certain wholesalers, alleging that a horizontal agreement among the wholesalers to abandon their practice of extending interest-free credit to the retailers and to refuse to sell to them except for cash in advance or on delivery contravened the prohibition against price fixing under the Sherman Act, 15 USC § 1. In holding that the agreement was anti-competitive and constituted illegal price fixing, the Court stated:

> "It is virtually self-evident that extending interest-free credit for a period of time is equivalent to giving a discount equal to the value of the use of the purchase price for that period of time. Thus, credit terms must be characterized as an inseparable part of the price." 446 US at 648. (Footnotes omitted.)

Although *Catalano* involved an action under the Sherman Act, the principle that credit terms are a part of price is equally applicable to a violation of ORS 646.040. Federal courts also have recognized that discrimination in credit terms can amount to price discrimination under the analogous provisions of the Robinson-Patman Act. *See Bouldis v. U.S. Suzuki Motor Corp.,* 711 F2d 1319 (6th Cir 1983); *Carlo C. Gelardi Corp. v. Miller Brewing Co.,* 502 F Supp 637 (D NJ 1980). We hold that a discrimination in credit terms can be a price discrimination within the scope of the Oregon Antiprice Discrimination Law.

■　　　　Defendant's alternative argument, that a discrimination in credit terms cannot as a matter of law constitute price discrimination when there is some evidence that the favorable credit terms were extended to settle a dispute is not well taken. It may be that differences in terms of credit do not as a matter of law violate prohibitions against price discrimination, because "differences in the borrower's financial strength, business experience, and many other factors bring about differences in the terms of credit." *Craig v. Sun Oil Co. of Pennsylvania,* 515 F2d 221, 224 (10th Cir 1975), *cert den* 429 US 829 (1976). However, under the Oregon statutory scheme, once a plaintiff has made out a *prima facie* case of price discrimination, the burden is on the defendant to show that under the circumstances the discrimination was "justified."

ORS 646.050. Accordingly, whether legitimate business factors existed to justify the favorable credit terms extended to Kawasaki City by defendant was a question of fact. That question properly was submitted to the jury for its determination and was resolved against defendant.[6]

Defendant's remaining assignments of error relate to jury instructions. Two of the assignments concern the following statement made by the trial court during its instructions:

> "Now, you are instructed that if you find that the defendant, Kawasaki, gave Kawasaki City a better return of parts policy, or a free line or better line of credit than it made available to the plaintiff, Competition Motors, then this would constitute an indirect price discrimination within the meaning of the Oregon Price Discrimination Act."

Defendant took separate exceptions to the portion regarding the parts policy and to that regarding the line of credit.

We first consider the instruction as it relates to parts. Defendant's exception was taken as follows:

> "As to instruction No. 3, I object to the giving of the instruction on purchase of parts, since the evidence does not support that and does in no way support the plaintiff had any parts to return of a comparable nature at a comparable time. In addition, it was a parts purchase and not a return of parts policy. * * *

> "I except to giving of any instruction as to the parts purchase or parts repurchase, again, since there's no evidence whatever to support that and, again, the comparability."

On appeal, defendant first contends that the instruction was erroneous because there was no evidence of a "return" of parts in that the parts at issue were acquired by RFH&S from Dobbins, not from defendant, and that there was no evidence of a "return of parts policy." An instruction, however, should be read as the jury might reasonably have understood it. *See Lazzari v. States Marine Corp.*, 230 Or 372, 377, 369 P2d 693 (1962). We believe that the instruction would be understood by ordinary jurors to refer to a purchase by defendant of Kawasaki parts that it had originally distributed, a reference

---

[6] We are not called upon to determine whether the jury should have concluded from the evidence that the discrimination was justified, because defendant expressly disclaims any reliance on a justification defense.

that was supported by the evidence. That there were several returns of parts during 1975 and 1976 allows an inference that there was a "return of parts policy."

■        Defendant's second contention is that the instruction was incorrect because it did not require the jury to determine first that defendant's purchases of parts from Kawasaki City were price related. Because defendant's exception dealt only with issues of evidence, it was insufficient to apprise the court of that claimed defect. Accordingly, it does not present a reviewable question. *See Kinney v. General Construction Co.,* 248 Or 500, 505, 435 P2d 297 (1967).

We turn then to defendant's exception to that instruction as it relates to credit:

> "[C]redit, as was given in instruction No. 3 as modified to include their instruction No. 4, credit is not covered by the act and I covered that in my trial memorandum.
>
> "* * * * *
>
> "I except to the giving of the instruction where the court said that if you find that free flooring or better line of credit was given then you must find that there was discrimination and I didn't — couldn't get the exact wording down, but I except to the giving of that instruction because plaintiff certainly has to prove far more than a free line of credit was given * * *. [A]nd, in addition, credit does not — is not contained within the act."

■ ■        Defendant argues that the instruction was erroneous, because *in fact* the preferential extension of credit was not related to sales to, or prices paid by, the alleged favored customer, so it could not constitute price discrimination. We are not persuaded. As we have stated, credit terms are an inseparable part of price. That a difference in credit terms to competing customers constitutes price discrimination is therefore a correct statement of law. That the discrimination may under some circumstances be justified so that as a matter of fact it would not constitute a violation of the Antiprice Discrimination Law, ORS 646.050, does not make the instruction erroneous. Even if the challenged instructions standing alone could be deemed to be prejudicial, the trial court's additional instructions adequately informed the jury of the law to be applied to the facts.

■        Defendant's final assignment is that the trial court

erred in failing to instruct the jury that "[i]n order to find the defendant liable under this situation, the discrimination in credit must be of great magnitude or nature as to constitute an extreme situation." That contention is without merit. The trial court in substance instructed the jury that, to find defendant liable under the statute, it must not only find that defendant discriminated in price between competing customers, but that injury to competition resulted from that price discrimination and caused damage to plaintiff. Further characterization of discrimination in credit as expressed in defendant's requested instruction was not required; the trial court did not err in failing to give the instruction.

Affirmed.